UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DAVID ALAN COLE and <br> KIMBERLY COLE, <br><br> Plaintiffs, <br><br> v. <br><br> SIG SAUER INC., <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:23-cv-00327--NT <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SIG SAUER'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Sig Sauer, Inc. ("Sig Sauer") moves the Court to enter an order granting summary judgment in its favor and dismissing, with prejudice, all claims brought against it by Plaintiffs, David Alan Cole and Kimberly Cole. In support of this motion and requested relief, Sig Sauer incorporates by reference the following memorandum of law, as well as its Statement of Material Facts (SMF) filed contemporaneously with this motion.[1]

## FACTUAL BACKGROUND

On May 4, 2022 the Plaintiff David Cole ("Cole" or "Plaintiff") was working as a detective for the Somerset County Sheriff's Office ("SCSO"). SMF No. 1. Cole was carrying his Sig Sauer P320 duty pistol that had been issued to him by the SCSO. SMF No. 2. The pistol was holstered on his right hip in a holster manufactured by Blackhawk and also issued to him by the SCSO. SMF Nos. 3, 4. The configuration of the holster allowed foreign objects access to the trigger of the P320. SMF No. 6. Cole was carrying the gun "hot" meaning that there was a live round in the chamber.

---

[1] Citations to "SMF No. __" will refer to the enumerated statements of fact set forth in Sig Sauer's SMF and the materials attached thereto.

1

SMF No. 5. He was holding a jacket he had removed in his arms above the holster. SMF No. 8. The jacket had multiple objects, including zippers, dangling from it. SMF No. 9. As he was walking to his vehicle and removing his vest, the pistol discharged. SMF No. 7. It is undisputed that Cole's P320 discharged because the trigger was actuated.[2] SMF No. 10.

## SUMMARY OF ARGUMENT

The Plaintiffs opine that an external safety – namely, a manual thumb safety or tabbed trigger – should have been included on Cole's P320 and hypothesize that those additional features might have prevented the gun from discharging. As explained in more detail below, the P320 was not defective, and there is no trial-worthy evidence that the additional features proposed by the Plaintiffs would have prevented the pistol from firing when the trigger was pulled.

Plaintiffs assert claims against Sig Sauer for negligence, strict products liability, fraudulent concealment, negligent failure to warn, defective design or manufacture,[3] breach of implied warranty of merchantability, and punitive damages. Whether sounding in negligence, strict product liability, or breach of implied warranty, all of Plaintiffs' claims based on product design defect require that they demonstrate both: (1) a design defect in the subject P320 and (2) legal causation. Sig Sauer seeks summary judgment on all of Plaintiffs' claims because:

- Courts in this Circuit have rejected a claim that a pistol is defective without a manual safety because it is a design feature, not a defect, and a manual safety would change the function of the pistol. *See Wasylow v. Glock, Inc.*, 975 F. Supp. 370 (D. Mass. 1996);

- A design-defect claim is actionable only where the allegedly defective product was in a condition not contemplated by the ultimate consumer, and here, Plaintiff and his employer

---

[2] Sig Sauer's experts determined the discharge was caused by a zipper tab hanging from Plaintiff's jacket entering the holster and depressing the trigger, and Plaintiff's proposed expert Vigilante agrees that this was a possible cause of the discharge. Watkins/Warren Suppl. SMF Nos. 12, 13.
[3] Plaintiffs' proposed experts do not offer any opinion that the P320 was defectively manufactured.

2

knew that the P320 they selected as a service weapon did not have an external safety;

- Plaintiffs cannot prove a design defect proximately caused the unintended discharge;

- Plaintiffs' proffered experts must be precluded under Fed. R. Evid. 702 and, without experts, Plaintiffs' claims fail as a matter of law;

- Sig Sauer had no duty to provide Plaintiffs' proposed additional warnings and, in any event, Plaintiff did not read any of the warnings provided and therefore cannot prove causation;

- Plaintiffs do not have evidence to support their fraudulent concealment claim necessary to survive summary judgment; and

- Plaintiffs have no evidence which comes close to establishing actual or implied malice on the part of Sig Sauer as required to support a claim for punitive damages.

## **LEGAL STANDARD**

A district court must grant summary judgment if, based on the evidentiary record, the movant "shows" that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That does not mean, however, that the moving party must produce affirmative evidence. Instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Not every factual dispute is "sufficient to thwart summary judgment; the contested fact must be 'material' and the dispute over it must be 'genuine.'" *Navarro v. Pfizer Corp.*, 261 F.3d

3

90, 93 (1st Cir 2001). A "material" fact is one that "might affect the outcome of the suit under the applicable legal standard." *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir.2004) (citation omitted). An issue is "genuine" if the evidence is such that "a reasonable jury could resolve it in favor of either party." *Id.* (citation omitted).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Goldman v. First Nat. Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993) ("There is no trialworthy issue unless there is enough competent evidence to enable a finding favorable to the nonmoving party."). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## LEGAL ARGUMENT

### I. The P320 is Not Defective

#### A. The Lack of an External Safety on the P320 is a Design Feature, not a Defect.

This Court should enter summary judgment on Plaintiffs' claims because the design and optional safety features available on the P320 cannot give rise to liability as a matter of law. Under Maine law, proof of design defect involves an examination of (i) the utility of the product's design, (ii) the risk of the design and (ii) the "feasibility of safer alternatives." *Elwell v. Conair, Inc.*, 145 F. Supp. 2d 79, 91 (D. Me. 2001). A plaintiff must demonstrate the product was defectively designed thereby exposing the user to an unreasonable risk of harm. *Canning v. Broan-Nutone, LLC*, 480 F. Supp. 2d 392, 403–04 (D. Me. 2007). To determine whether an alternative design is "feasible," the court looks at whether: " (1) magnitude of the danger-in-fact that could have been

4

avoided by such alternative design in the (2) utilization of the scientific technological know-how reasonably available to the defendant outweighed the (1) financial costs of guarding against such avoidable danger, (2) *the impairment of the benefits,* and (3) any new danger-in-fact that would have been created by the alternative design." *Espeaignnette v. Gene Tierney Co.*, 43 F.3d 1, 6 (1st Cir. 1994) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 99 at 700 (5th ed. 1984)) (emphasis in original).

Under this standard, Plaintiffs cannot show that an external safety—specifically, a manual thumb safety or tabbed trigger—constitutes a feasible alternative design. A thumb safety is a switch on the side of a pistol that "the operator must manually toggle 'ON' and 'OFF.'" SMF No. 29. A tabbed trigger is a mechanism that prevents the trigger from being depressed if it is not disengaged through the normal action of pulling the trigger. SMF No. 33. First, as discussed below, Plaintiffs have no evidence that the "danger-in-fact could have been avoided by either of these features. Moreover, adding the proposed external safeties to the P320 would significantly impair the benefits of the current design and present new danger-in-fact. The P320 meets and/or exceeds all industry abuse standards without requiring the added complexity of a manual thumb safety or tabbed trigger. SMF No. 35. And "[i]t is a recognized design limitation in mechanical engineering that each part that is added to a product introduces an opportunity for failure and reduced reliability." SMF No. 36.

Indeed, courts in this Circuit have held that external safeties are design features of a gun that affect its function and the lack of such external safeties is not a defect. *Wasylow v. Glock, Inc.*, 975 F.Supp. at 379. In dismissing the plaintiff's defect claims, the court reasoned, *inter alia*, that:

> I note that while an alternative design for the Glock pistol (incorporating a manual safety or magazine disconnect), or for the Glock box (allowing for loaded storage) is economically feasible, the functional purpose of both products would be altered. Glock intentionally designed the Glock 21 pistol, a semi-automatic weapon,

5

> without a manual safety or magazine disconnect to allow "the best possibility [for] getting off a shot quickly and without having to operate external safety devices." Similarly, the lack of a magazine disconnect allows for firing, if necessary, while in the process of loading or reloading. Thus, unlike, for example, automobile airbags, **manual safeties and magazine disconnects affect the functional capabilities and not just the safety of the respective products**.

*Id.* at 379-80 (emphasis added); *see also DeRosa v. Remington Arms Co., Inc.*, 509 F.Supp. 762, 768 (E.D.N.Y.1981) (finding light trigger tension, with inexpensive alternatives available, not design defect due to its functional purpose).

For the same reasons cited by the court in *Wasylow*, Sig Sauer's intentional choice to offer versions of the P320 without an external safety for consumers (like the Somerset County Sherriff's Office) to purchase a firearm with improved accuracy and speed in getting off a shot quickly, does not constitute a defect as a matter of law. Plaintiffs' own putative experts acknowledge that certain law enforcement agencies have policies against manual thumb safeties because it allows for the quick and efficient use of the pistol, unimpeded by the additional step required to disengage a manual safety. SMF No. 32. Specifically, Vigilante recognizes that whether to carry with manual thumb safety is "user's choice," and that training is required to properly engage and disengage a manual thumb safety SMF No. 30. If engaged, a manual thumb safety can be an impediment to discharging in an emergency situation where time to fire is crucial. SMF No. 31.

A tabbed trigger is also a feature which affects the functional capabilities of a pistol, because to the extent it reduces the risk of inadvertent actuation to the sides of the trigger, it necessarily also introduces finger placement hazard—the risk that a user who *intends* to fire the weapon inadvertently places his finger on the trigger in a position that fails to disengage the tab. SMF No. 37. The P320 does not need a tabbed trigger to pass industry standard drop tests because it was designed with a balanced trigger mechanism and is not susceptible to drop-fires in the same manner as firearms with unbalanced trigger mechanisms. SMF No. 34.

Police departments recognize there are risks inherent in choosing a pistol that includes an external safety, as evidenced by intentional choices they make as to whether to include this optional feature on their service weapons. For this reason, the lack of an external safety cannot, as a matter of law, be deemed a defect or unreasonably dangerous condition. Instead, it is a feature that is preferred by many in law enforcement to protect their officers in the line of duty. As such, Plaintiffs' design defect claims should be dismissed.

### B. Plaintiffs' Design Defect Claims Fail Because the P320 Was in the Exact Condition Contemplated Plaintiff and his Employer

Here, Plaintiffs cannot recover on a design defect theory for the additional reason that the P320 was in the exact condition contemplated by both Cole and the SCSO, which selected the P320 as its duty pistol.

"[A]n injured person can prevail in such a design defect claim only if the product left the seller's hands 'in a condition not contemplated by the ultimate consumer.'" Burns, 19 A.3d at 828 (quoting RESTATEMENT (SECOND) OF TORTS § 402A, cmt. g (1986)). The record evidence demonstrates that at the time the SCSO selected the P320, it undoubtedly understood that the P320 was a striker fired pistol without an external safety. In fact, prior to purchasing the P320, the SCSO obtained and evaluated a test gun, and its firearms instructor completed the armorer course for the P320. SMF Nos. 15-18. In addition, at the time Cole was issued the P320, he was also personally aware of the availability of external safeties, having had prior experience with a manual thumb safety on other firearms. SMF No. 19. Simply put, the P320 is precisely what the SCSO and Plaintiff contemplated when the department purchased the pistol and issued it to its officers. Despite ample knowledgeable regarding these features, the SCSO selected a service weapon which did not include them, and Plaintiff carried that weapon with full awareness of this fact. Plaintiff cannot now complain that the P320 is defective for lacking optional features which his employer

7

determined were not preferable and which he knew or should have known were not included.

## II. Plaintiffs' Complaint Should Be Dismissed Because They Cannot Prove Defect or Proximate Causation.

Plaintiffs' negligence, strict products liability, defective design, and breach of implied warranty of merchantability claims rise and fall with their ability to prove that: (1) Cole's P320 pistol was "defectively designed thereby exposing the user to an unreasonable risk of harm"; and (2) that the defect was the legal cause of his injuries. *Doe v. Solvay Pharms., Inc.*, 350 F. Supp. 2d 257, 266 (D. Me. 2004), *aff'd*, 153 F. App'x 1 (1st Cir. 2005); *Phillips v. Emerson Elec. Co.*, No. 2:02-cv-179, 2003 WL 21011349, at *3 (D. Me. May 5, 2003); *Guiggey v. Bombardier*, 615 A.2d 1169, 1171–72 (Me. 1992).

Summary judgment is appropriate because Plaintiffs cannot prove either.

### A. The Experts Agree Something Pulled the Trigger and Plaintiffs Cannot Prove Legal Causation.

Under Maine law, plaintiffs asserting claims based on design defect must prove that the defective condition of the product was a proximate cause of the claimed injuries. The Law Court defines "[p]roximate cause [as] 'that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred.'" *Webb v. Hass*, 1999 Me. 74, ¶ 20, 728 A.2d 1261, 1267 (citations omitted). According to this definition of proximate cause, "a negligent act is the proximate cause of an injury if 'the actor's conduct is a substantial factor in bringing about the harm.'" *Clement v. United States*, 980 F.2d 48, 53 (1st Cir. 1992) (quoting *Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973)). To prove causation in the context of a design-defect claim, a plaintiff must establish that, at the time the at-issue product was manufactured, there existed a safer, feasible alternative design ***that would have prevented the complained-of injuries***. *Reali v. Mazda Motor of Am., Inc.*, 106 F. Supp. 2d 75, 80–81 (D. Me. 2000). Proximate cause is a critical element of a design defect case regardless of

8

whether the claim sounds in negligence, strict liability, or implied warranty of merchantability. *See Doe v. Solvay Pharms., Inc.,* 350 F. Supp. 2d 257, 266 (D. Me. 2004), *aff'd,* 153 F. App'x 1 (1st Cir. 2005); *Porter v. Pfizer Hosp. Prods. Grp., Inc.*, 783 F. Supp. 1466, 1473 (D. Me. 1992).

Where there is too little evidence to prove a critical element of the plaintiff's claim and, as a result, the jury must speculate in order to return a verdict for the plaintiff, the defendant is entitled to summary judgment. *Koken v. Black and Veatch Construction, Inc.,* 426 F.3d 39, 49 (1st Cir. 2005). Proximate cause can be determined as a matter of law where causation is only a mere possibility, as well as "when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced." *Champagne v. Mid-Maine Medical Center*, 1998 Me. 87, ¶ 10, 711 A.2d 842, 845 (granting summary judgment on causation) (quoting Restatement (Second) of Torts § 433B cmt. a, at 442 (1965)).

Even with their experts' testimony (which should be excluded as set forth in separate Rule 702 motions), wherein each will opine that the trigger on Cole's pistol was pulled, Plaintiffs still have no evidence to support their allegations that the proffered design defects (the lack of a manual or tabbed trigger safety) actually *caused* the unintentional discharge. Although there is no dispute the trigger was pulled, neither of Plaintiffs' proffered experts—William Vigilante, Jr. or Randy Kent—can testify as to whether Cole's trigger was actuated on the top, bottom, or side, even though a tabbed trigger, the alternate design they champion, would not have prevented the discharge if the trigger had been actuated on the front. SMF Nos. 38, 39. And neither provide any testimony that, had Plaintiff's pistol included the optional manual thumb safety that his police department declined to purchase, it would have been engaged at the time of his accident, because his testimony supports the opposite conclusion. SMF Nos. 20, 21, 22. Specifically, Cole admitted that on the H&K duty pistol he used prior to the P320, he kept the manual safety "off" when the

9

gun was holstered. SMF Nos. 20, 21, 22. Thus, although these "experts" employ the requisite buzzwords to posit that an external safety "most likely" would have prevented the incident, they fail to provide any support for that opinion. Rather, the matter remains one of pure speculation or conjecture, with the probabilities at best evenly balanced. For that reason, Plaintiffs' expert testimony fails to create a genuine issue of material fact on causation, and summary judgment is warranted for failure to establish this essential element of their claims.

> **B. This Court Should Enter Summary Judgment Because Plaintiffs Have No Admissible Expert Testimony to Prove their Claims, And the Record is Devoid of Any Other Evidence to Support a Finding of Defect or Causation**

It is well-settled that when the determination of a fact at issue depends on specialized knowledge beyond the knowledge of the ordinary juror, expert testimony is required in order to make a case for the jury. Field & Murray, *Maine Evidence* § 702.2 at 378 (6th ed. 2007) ("Some issues are so universally recognized by the courts to require expert evidence that the plaintiff fails to make a case for the jury unless the plaintiff produces supporting expert testimony."). Claims that sound in product liability, including those styled as a failure to warn, faulty manufacture, or improper or defective design, fit comfortably within this mold because they require technical explanation that is beyond the knowledge of the ordinary juror. *Ames v. Dipietro-Kay Corp.*, 617 A.2d 559, 561 (Me. 1992); *Rand v. Swiss Army Brands*, 2007 Me. Super. LEXIS 50, *9-11 (relying on expert evidence in design defect claim and noting absence of expert evidence in failure to warn claim); *Thibeault v. Square D Co.*, 960 F.2d 239, 239 (1st Cir. 1992) (upholding entry of summary judgment where no expert testimony was adduced to support claim of defective product design and manufacture); *Hochen v. Bobst Grp., Inc.*, 290 F.3d 446, 451 (1st Cir. 2002) (upholding summary judgment where "the nature of the defect or breach of warranty and its causal relation to the accident were complex and thus appropriately the subject of expert testimony.").

How an external thumb safety or tabbed trigger are designed and work and whether they would have prevented Cole's pistol from discharging under the circumstances of the incident are clearly outside the general understanding of a layperson. Instead, specific engineering knowledge is required and Plaintiffs must support their claims with expert testimony. Because each of Plaintiffs' liability expert's testimony must be precluded for the reasons set forth in Sig's Rule 702 Motions, Plaintiffs have no expert testimony necessary for their claims to survive summary judgment.

Other U.S. District Courts, deciding similar motions, agree. *See Frankenberry v. Sig Sauer, Inc.*, No. 4:19-CV-02990-JD, 2022 WL 22887079, at *7 (D.S.C. Feb. 4, 2022) ("Plaintiffs' defect theory is outside the knowledge of an ordinary layperson."); *Mayes v. Sig Sauer, Inc.*, No. 119CV00146GNSHBB, 2023 WL 2730264, at *9 (W.D. Ky. Mar. 30, 2023), *amended*, No. 119CV00146GNSHBB, 2023 WL 3854266 (W.D. Ky. June 6, 2023); *Jinn v. Sig Sauer, Inc.*, No. 20CV1122PGGRWL, 2023 WL 2919558, at *17 (S.D.N.Y. Apr. 12, 2023), *report and recommendation adopted sub nom. Jinn v. Sig Sauer. Inc.*, No. 20CIV1122PGGRWL, 2023 WL 5972507 (S.D.N.Y. Sept. 13, 2023); Order, *Hilton v. Sig Sauer, Inc.*, No. 1:21-CV-00441-MJT, p. 16 (E.D. Tx. June 8, 2023) (Ex. 28); *Slatowski v. Sig Sauer, Inc.*, No. CV 21-729-RBS, 2024 WL 1078198, at *4 (E.D. Pa. Mar. 12, 2024); *Herman v. Sig Sauer Inc.*, No. CIV 21-1038-R, 2023 WL 5827054, at *6 (W.D. Okla. Sept. 8, 2023), *aff'd sub nom. JOHN TYLER HERMAN, Plaintiff - Appellant, v. SIG SAUER INC., Defendant - Appellee.*, No. 23-6136, 2025 WL 1672350 (10th Cir. June 13, 2025).

Moreover, even if expert testimony were not required in this case, Plaintiffs' design defect claims fail as a matter of law because the Plaintiffs cannot support those claims with record evidence. Summary judgment is appropriate unless "the evidentiary record is rich enough to

11

support the necessary findings, inferential or otherwise, on the danger/utility test that governs products liability claims brought in Maine courts." *Taylor v. Ford Motor Co.*, No. CIV. 06-69-B-W, 2008 WL 879411, at *4 (D. Me. Mar. 28, 2008), *report and recommendation adopted*, No. CV-06-69-B-W, 2008 WL 2224887 (D. Me. May 27, 2008). *See also Elwell v. Conair, Inc.*, 145 F. Supp. 2d 79, 91 (D. Me. 2001) (excluding proffered expert testimony that food professor was defectively designed and granting summary judgment because plaintiff failed to identify any source of evidence required to prove product defect other than the excluded testimony).

Cole testified that (1) when he previously carried the H&K USP 45 as his duty pistol, his usual practice was to leave that safety *off* when the gun was holstered, and (2) he does not know if anything was in contact with the pistol or the holster to discharge the pistol. SMF Nos. 11, 20, 21, 22. Even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs cannot show, as a matter of law, that an external safety measure would have prevented the discharge. As such, Plaintiffs have no direct or circumstantial evidence from which a reasonable jury could find, without making impermissible inferences based on conjecture and mere probabilities, that the alleged defects in the P320 *proximately caused* the unintentional discharge. *Champagne v. Mid-Maine Medical Center*, 1998 Me. 87, ¶ 10, 711 A.2d 842, 845.

### III. Plaintiffs' Failure to Warn Claim Must Be Dismissed Because Plaintiff Did Not Read the Provided Warnings

Plaintiff in a product liability action for failure to warn must establish (1) the defendant had a duty to warn the plaintiff; (2) the actual warning accompanying the product, if any, was inadequate; and (3) the inadequate warning proximately caused the plaintiff's injury. *Pottle v. Up–Right, Inc.*, 628 A.2d 672, 675 (Me. 1993). "First, a duty to warn arises when the manufacturer knew or should have known of a danger sufficiently serious to require a warning." *Id.* "Second, when a duty to warn exists, the warning must advise the user of the risks associated with its product

and offer the user specific directions for the product's safe use." *Id.* "Third, the manufacturer's failure to provide an adequate warning must be a substantial factor in bringing about the plaintiff's injury." *Id.* To prove the third element, causation, a plaintiff must show that, had a different, allegedly adequate warning been given, the plaintiff would not have been injured. *Koken v. Black & Veatch Const., Inc.*, 426 F.3d 39, 49 (1st Cir. 2005).

Here, even if additional warnings were warranted—which they decidedly were not—Plaintiffs cannot establish causation. Cole did not review the operator's manual and would not have read any additional warnings Sig Sauer may have provided. He testified that he never received, asked for, or read the operator's manual for the P320. SMF No. 23, 24, 25. Nor did he do any online research or review any marketing information issued by Sig Sauer regarding the P320 prior to the incident. SMF No. 28.

His failure to read the warnings that were provided by Sig Sauer preclude Plaintiffs' failure to warn claim as a matter of law. *See Santos-Rodríguez v. Seastar Sols.*, 858 F.3d 695, 698 (1st Cir. 2017) (affirming summary judgment because there was undisputed evidence that no one had read the manual for the boat and, therefore, "no warnings in it could have prevented [plaintiff's] injuries"). This is, of course, common sense—where a plaintiff fails to read the warnings provided in the manual, it must follow that even if they could prove the manual did not contain adequate warnings or instructions, "that cannot be the proximate cause of [the] injury." *Santos-Rodriguez*, 858 F.3d at 698.

### IV. Plaintiffs Lack Any Evidence to Demonstrate the Elements of Their Fraudulent Concealment Claim

"[T]o prevail on a claim for fraudulent concealment, a plaintiff must prove, by clear and convincing evidence, (1) a failure to disclose, (2) a material fact, (3) when a legal or equitable duty to disclose exists, (4) with the intention of inducing another to act or refrain from acting in reliance

13

on the non-disclosure, and (5) the plaintiff in fact relied upon the non-disclosure to the plaintiff's detriment." *Picher v. Roman Cath. Bishop of Portland*, 2013 ME 99, ¶ 3, 82 A.3d 101, 102. Here, the record is devoid of evidence to support any element of a fraudulent concealment claim. In Count III of the Complaint, Plaintiffs allege that Sig Sauer "failed to disclose to Plaintiffs any of the hazards of the dangerous and/or defective design and/or OSI of misfiring P320s of which it had actual and/or constructive knowledge." Compl. ¶ 177. SMF No. 41. In other words, Plaintiffs' fraudulent concealment claim is premised on Sig Sauer's alleged failure to disclose "defects" in the P320—an argument which is dead on arrival because, as discussed *supra*, Plaintiffs cannot prove that the P320 was defectively designed and therefore cannot show that Sig Sauer had knowledge of any "material fact" which it failed to disclose. Further, to the extent Plaintiffs rely on the purported non-disclosure of other unintentional discharge incidents, Sig Sauer had knowledge only that these unintentional discharges (which unfortunately occur with all firearms) occurred when the trigger was pulled, as the pistol is designed to do, a fact Plaintiffs' own expert does not dispute. SMF No. 40. This "is not the type of material information that triggers a duty to disclose." *Picher*, 2013 ME 99 ¶ 4.

**V.  Plaintiffs Lack Evidence Sufficient to Sustain Their Punitive Damages Claim**

In the event of judgment for Sig Sauer on Plaintiffs' underlying claims discussed above, Plaintiffs' punitive damages claim cannot survive as a standalone cause of action. *See Cluney v. Brownells, Inc.*, 2025 WL 1017687, at *9 (D. Me. Apr. 4, 2025) (stating that "punitive damages are a form of remedy available for sufficiently malicious tortious conduct…and not a standalone cause of action") (internal citation omitted). Accordingly, if Plaintiffs' underlying tort claims fall away, so too must their punitive damages claim.

Additionally, Sig Sauer is entitled to judgment on Plaintiffs' claim for punitive damages for substantive reasons as well. In Maine, punitive damages are available only upon proof by clear

and convincing evidence that a defendant acted with either express or implied malice. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). Implied malice requires evidence of deliberate conduct on the part of the defendant that is so outrageous that malice toward a person injured as a result of that conduct can be implied. *Id.* Negligence or reckless disregard is not enough. Rather, the law will permit an award of punitive damages only upon showing of outrageousness. The evidence in this case falls well short of this standard.

The available evidence shows that Sig Sauer designed the P320 with great care, deliberately choosing to omit certain optional features in view of all relevant considerations impacting safety, functionality, and philosophy of use. Plaintiffs' position that Sig Sauer *should* have incorporated an external safety into every P320 solely because it *could* have ignores these considerations. Under the well-settled product liability laws in Maine,

> Products cannot be termed defective simply because they do not contain some hypothetical device or design configuration. A manufacturer is not required to design a product which is incapable of injuring those who foreseeably come into contact with it. A manufacturer is not required to design the best possible product, or one as good as someone else may make, or a better product than the one he has, as long as his product is reasonably safe.

*Speed v. Giddings & Lewis, LLC*, No. CIV. 05-149BK, 2007 WL 4245903, at *8 (D. Me. Nov. 29, 2007).

It is undisputed that the P320 passes and/or exceeds all applicable industry, law enforcement, and military abuse standards without the added complexity of an external safety. SMF No. 35. Moreover, the data show that in designing the P320, Sig Sauer effectively mitigated the risk of unintentional discharges which is present in all firearms. Specifically, of the more than 3.6 million P320s in the marketplace, 0.01% of those pistols are involved in some form of unintended discharge, and if one assumes that only one quarter of the 3.65 million P320s have been in the market for a year or more, that equates to nearly 333 million days on which an unintended

discharge could be observed, or an incidence rate of 0.0001% in a single year, no greater than one's chances of being struck by lightning. SMF Nos. 42, 43, 44, 45. Neither Plaintiffs nor their experts offer any evidence to dispute the above-cited incidence rate *or* compare it to any other pistol on the market. SMF Nos. 46, 47.

Sig Sauer anticipates that Plaintiffs' primary argument will be that they can support a claim for punitive damages with purported evidence that Sig Sauer was "on notice" of a "vulnerability" which causes the P320 to discharge while holstered when foreign objects enter the holster and contact the trigger. This argument fails on its face, because what Plaintiffs seeks to paint as a vulnerability unique to the P320 is in fact an industry-wide, known risk that is in no way specific to Sig Sauer or the P320. It is undisputed that the configuration of any pistol and the specific holster in which it is seated will determine the existence and size of any openings and, therefore, the degree of access of foreign objects (or fingers) to the trigger. SMF No. 48. Therefore, *with any pistol*, the user, be it an individual or law enforcement agency, must afford care and attention to the selection of a holster to ensure it complements safe handling practices.

There is a plethora of evidence demonstrating that the risk of an object entering a holster and actuating a trigger is, and has always been, common to the firearms industry, not unique to Sig Sauer or the P320. SMF Nos. 49, 50, 51, 52. Thus, any assertion that the occurrence of unintended discharges due to trigger actuation by objects entering holsters is in any way unique to the P320 lacks any statistical support and is plainly belied by this overwhelming evidence.

The P320, like every firearm, is designed to fire when the trigger is pulled. And, like every other firearm, the trigger of the P320 cannot distinguish between an intentional or unintentional trigger pull, or between a finger or foreign object. Thus, any incident in which it was determined that a holstered P320 discharged unintentionally due to the trigger being depressed by an object

16

entering the trigger guard, while possibly signifying an issue related to holster selection and/or the trigger discipline exercised by the user, in no way indicates a defect in the P320. At bottom, Plaintiffs' alleged entitlement to punitive damages in this case rests entirely on Sig Sauer's purported awareness of incidents which he fails to establish were any different than those which have long been reported across the industry in which a foreign object interacts with a trigger of a holstered pistol.

While Plaintiffs may rely on cherry-picked examples of other unintended discharges, including in situations where law enforcement personnel have transitioned from another firearm to the P320 without adequate training, there are multiple examples of an increase in unintended discharges occurring when a department transitions from one pistol to a different, *non*-P320 pistol, including those which are equipped with tabbed triggers. *See, e.g.*, Leen, Jeff, Horwitz, Sari. Armed and Unready. WASHINGTON POST, Nov. 18, 1998 (detailing over 100 unintentional discharges of Glock service weapons by the D.C. police and outlining the dozens of lawsuits against Glock in the 1990's alleging its light trigger pull and lack of a manual safety constituted a defect that rendered it too susceptible to unintended discharges) (Ex. 23); OFFICE OF INSPECTOR GEN., COUNTY OF LOS ANGELES, ASSESSING THE RISE IN UNINTENDED DISCHARGES FOLLOWING THE SHERIFF'S DEPARTMENT'S CONVERSION TO A NEW HANDGUN (December 2015), (analyzing 500% increase in unintentional discharges after transitioning to Smith & Wesson M&P) (Ex. 24).

In sum, there is no evidence that Sig Sauer's considered design choices were in any way negligent, much less reckless, or that it has acted with malice or reckless disregard for the safety of its users at any time. Therefore, as a matter of law, Plaintiffs cannot sustain a claim for punitive damages.

## **CONCLUSION**

WHEREFORE Sig Sauer, Inc. requests the entry of an order granting this motion for summary judgment and dismissing, with prejudice, all claims brought against it by Plaintiffs.

Date: July 25, 2025

                        Respectfully submitted,

                        */s/ Kristen E. Dennison*
                        Kristen E. Dennison, Esq (Admitted *Pro Hac Vice*)
                        **LITTLETON JOYCE UGHETTA & KELLY LLP**
                        2460 N. Courtenay Pkwy, Suite 204
                        Merritt Island, FL 32953
                        Tel:  321-574-0280
                        Fax: 321-574-4054
                        Kristen.Dennison@LittletonJoyce.com

                        *– and –*

                        Martha C. Gaythwaite, Esq., Bar No. 9828
                        **VERRILL DANA LLP**
                        One Portland Square
                        Portland, ME 04101
                        (207) 253-4650
                        mgaythwaite@verrilldana.com

                        *Counsel for Defendant Sig Sauer, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed through the ECF system and will be sent electronically to all counsel of record.

Dated: July 25, 2025

                                                    */s/ Kristen E. Dennison*
                                                    Kristen E. Dennison