UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DAVID ALAN COLE and<br>KIMBERLY COLE,<br><br>    Plaintiffs,<br><br>v.<br><br>SIG SAUER INC.,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:23-cv-00327--NT<br>)<br>)<br>) |

**DEFENDANT SIG SAUER, INC.'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant Sig Sauer, Inc. ("Sig Sauer"), by and through its attorneys, hereby moves pursuant to Fed. R. Civ. P. 56 for summary judgment to dismiss Plaintiffs' Complaint, and in support thereof, submits the following Statement of Undisputed Facts pursuant to Local Rule 56(b).

1. On May 4, 2022, Plaintiff David Alan Cole ("Cole" or "Plaintiff") was detective with the Somerset County Sherriff's Office ("SCSO"). D. Cole Dep. at 61:14-22 (Ex. 1).[1]

2. Prior to May 4, 2022, Plaintiff was issued a Sig Sauer P320 pistol as his duty weapon. *Id.* at 56:5-7.

3. Prior to May 4, 2022, Plaintiff was issued a Blackhawk Serpa holster for his P320 duty weapon. D. Lancaster Dep. at 18:14-24; 56:6-57:1 (Ex. 2).

4. On May 4, 2022, Plaintiff's pistol was holstered on his right hip in his Blackhawk Serpa duty holster. D. Cole Dep. at 88:22-89:8 (Ex.1).

---

[1] All exhibit references are to the exhibits to the Declaration of Kristen E. Dennison filed concurrently herewith.

1

5. On May 4, 2022, at the time of the incident, Cole was carrying the pistol with a live round in the chamber. *Id.* at 169:23-170:1

6. The Blackhawk Serpa holster did not fully cover the trigger guard of Cole's P320 pistol, making the trigger accessible to foreign objects. *See* Kent Rpt. at p. 22 (Ex. 3).

7. As Cole was walking to his vehicle and removing his vest, his pistol discharged. D. Cole Dep. at 111:13-112:10 (Ex. 1).

8. At the time of the discharge, Cole was carrying a jacket he had removed in his hands. *Id.*

9. Multiple objects, including zippers, were attached to and dangling from the jacket Plaintiff was holding in his hands at the time of the discharge. *See* Vigilante Dep (Vol. I) at 25:20-27:9 (Ex. 4).

10. Plaintiff's P320 discharged because the trigger was actuated. Watkins/Warren Suppl. Rpt. at p. 2 (Ex. 6); Kent Dep. at 6:1-8 (Ex. 7); Vigilante Dep. (Vol. I) at 21:13-18 (Ex. 4).

11. Plaintiff did not know if anything was in contact with the pistol or the holster when the pistol discharged. D. Cole Dep. at 48:1-49:7; 112:24-113:9 (Ex. 1).

12. Sig Sauer's experts determined the discharge was caused by a zipper tab hanging from Plaintiff's jacket entering the holster and depressing the trigger. Watkins/Warren Suppl. Rpt. at p. 2 (Ex. 6).

13. Plaintiff's proposed expert Vigilante agrees that the zipper tab on Plaintiff's Jacket was a possible cause of the discharge. Vigilante Dep. (Vol. I) at 25:20-29:24 (Ex. 4).

14. At the time the SCSO purchased the P320 as its duty pistol, Sig Sauer offered P320 pistol models both with and without a manual thumb safety. *See* Vigilante Rpt. at p. 2; (Ex.8 ); Watkins Rpt. at p. 8 (Ex. 9); P320 Operators Manual at p. 16 (Ex. 10).

15.     Prior to ordering the P320 duty pistols, the SCSO obtained and evaluated a test gun. *See* Rizzo Dep. at 37:20-38:5 (Ex. 11).

16.     SCSO firearms instructor Michael Rizzo shot approximately 300 rounds through the P320 test gun. *Id.* at 38:13-15.

17.     Officer Rizzo provided positive feedback regarding the P320 to Sherriff Lancaster, who made the final decision to order the pistol. *Id.* at 38:10-15; 38:18-39:7; 39:24-40:23.

18.     Officer Rizzo, along with sheriff's deputy supervisor and firearms instructor Ritchie Putnam, completed the Sig Sauer armorer course for the P320. *Id.* at 12:24-13:6; 41:7-13.

19.     Plaintiff had prior experience with pistols with manual thumb safeties at the time the SCSO issued him the P320. *See* D. Cole Dep. at 44:6-17 (Ex. 1).

20.     One of Plaintiff's prior duty weapons—and H&K USP 45—had a manual thumb safety. *Id.* at 48:1-49:7.

21.     Plaintiff typically left the manual thumb safety on his H&K USP 45 *off* when the gun was holstered. *Id.*

22.     Plaintiff was trained by the SCSO to carry the H&K USP 45 "hot," meaning without a manual thumb safety engaged and with a round in the chamber. *Id.*

23.     The SCSO did not provide Plaintiff with the operator's manual that came with the P320. *Id.* at 97:13-17; Rizzo Dep. at 66:2-19 (Ex. 11).

24.     Plaintiff did not ask for the operator's manual for the P320. D. Cole Dep. at 98:14-16 (Ex. 1).

25.     Plaintiff never read the operator's manual for the P320. *Id.* at 126:16-18.

26.     Officer Michael Rizzo, a firearms trainer with the SCSD, issued Cole the P320 pistol and qualified him on the pistol. Rizzo Dep. at 67:8-17; 60:4-12 (Ex. 11).

27. Officer Rizzo did not review the P320 operator's manual in its entirety. Rizzo Dep. at 67:8-17; 60:4-12 (Ex. 11).

28. Plaintiff did not do any research online or review any marketing information issued by Sig Sauer regarding the P320 prior to the incident. D. Cole Dep. at 126:19-23; 82:17-19; 82:24-83:8 (Ex. 1).

29. A thumb safety is a switch on the side of a pistol that "the operator must manually toggle 'ON' and 'OFF.'" *See* Watkins Rpt. at 14 (Ex. 9).

30. Plaintiff's proposed expert Vigilante recognizes that whether to carry a gun with manual thumb safety is "user's choice," and that training is required to properly engage and disengage a manual thumb safety. Vigilante Dep. in *Desrosiers* at 78:7-80:14 (Ex. 12).

31. If engaged, a manual thumb safety can be an impediment to discharging a weapon in an emergency situation. *See* Vigilante Dep. (Vol. I) at 220:1-6 (Ex. 4); Kent Dep. at 240:15-22 (Ex. 7).

32. Certain law enforcement agencies have adopted policies against having manual thumb safeties on their service weapons. Vigilante 6/20/25 Dep. at 36:18-37:2 (Ex. 13).

33. A tabbed trigger is a mechanism that prevents the trigger from being depressed if it is not disengaged through the normal action of pulling the trigger. *See* Watkins Rpt. at p. 10 (Ex 9).

34. The P320 does not need a tabbed trigger to pass standard drop tests because it was designed with a balanced trigger mechanism and is not susceptible to drop-fires in the same manner as firearms with unbalanced trigger mechanisms. Watkins Rpt. at p. 23-24 (Ex. 9).

35. The P320 meets and/or exceeds all industry abuse standards without an external safety. Watkins Rpt. at pp. 6-7, 29-30, 53 (Ex. 9).

36. It is a recognized design limitation in mechanical engineering that each part that is added to a product introduces an opportunity for failure and reduced reliability. *Id.* at p. 20.

37. A tabbed trigger introduces finger placement hazard—the risk that a user who *intends* to fire the weapon inadvertently places his finger on the trigger in a position that fails to disengage the tab. *See* Kent Dep. at 154:10-155:3; 240:23-241:6 (Ex. 7); Watkins Rpt. at p. 20 (Ex. 9).

38. Vigilante does not offer an opinion as to where Plaintiff's trigger was contacted to discharge the pistol. Vigilante 6/20/25 Dep. at 89:1-22 (Ex. 13); Vigilante Dep. (Vol. I) at 20:13-21:8 (Ex. 4).

39. Kent was not able to determine where on the trigger a foreign object made contact with Plaintiff's trigger to cause the discharge. Kent Dep. at 222:2-20 (Ex. 7).

40. Kent agrees that in all of the other unintentional discharges involving P320 pistols he reviewed, the gun fired because the trigger was pulled. Kent Dep. at 112:21-25 (Ex. 7).

41. In Count III of the Complaint, Plaintiffs allege that Sig Sauer "failed to disclose to Plaintiffs any of the hazards of the dangerous and/or defective design and/or OSI of misfiring P320s of which it had actual and/or constructive knowledge." Compl. ¶ 177 (Ex. 14).

42. There are more than 3.6 million P320s in the marketplace. R. Rauschenberger Rpt. at p. 9 (Ex. 15).

43. Of the number of P320s in the marketplace, 0.01% of those pistols are involved in some form of unintended discharge. *Id.*

44. Assuming only one quarter of the 3.65 million P320s have been in the market for a year or more, that equates to nearly 333 million days on which an unintended discharge could be observed, or an incidence rate of 0.0001% in a single year. *Id.*

45. The incidence rate of unintended discharges with a P320 pistol in a single year is no greater than one's chances of being struck by lightning. *Id.*

46. Vigilante did not determine the incidence rates of unintentional discharges involving any other model pistols on the market. *See* Vigilante Dep. (Vol. I) at 166:8-11; 167:14-168:20 (Ex. ); Vigilante Dep. (Vol. II) at 72:7-9 (Ex. ). *See also id.* at 172:3-15; Vigilante Dep. in *Catatao* at 137:23-138:11; 148:7-149:9; 153:3-14; 155:8-16 (Ex. ).

47. Kent did not determine the incidence rates of unintentional discharges involving any other model pistols on the market. Kent Dep. at 267:21-23; 273:1-7 (Ex. 7).

48. The configuration of a pistol and the specific holster it is in determine the existence and size of any openings which may provide access to the trigger. Vigilante 6/20/25 Dep. at 85:6-14 (Ex. 13).

49. In October 2005, Safariland, a holster manufacturer, issued a service bulletin which warned: "Please be aware that handguns with lights mounted to them create a necessarily large opening in the holster that could possibly allow access to the trigger of the holstered handgun." *See* Oct. 21, 2005 Safariland Service Bulletin (Ex. 17).

50. Dodge issued a service bulletin in 2015 instituting a procedure for installation of a comfort clip in Dodge Chargers to allow officers to reposition the seat belt latch plate to minimize the risk of unintended equipment interactions. Dec. 5, 2015 Dodge Service Bulletin (Ex. 18).

51. When Safariland introduced an updated holster design in 2024, it did so specifically for Glock pistols, which are equipped with a tabbed trigger. https://inside.safariland.com/blog/the-ballast-safarilands-most-advanced-holster/ (accessed 7/25/25); https://safariland.com/products/ballast?srsltid= AfmBOooGJf9rFnv9rBkscbJ3NuT9ZCIWgFxRLxSIjklI_1f_rPcV40cE (accessed 7/25/25).

52. Safariland updated its holster design in 2024 with an express goal to "fix the gap" around the trigger guard, which Safariland identified as a "common issue with holsters designed for weapon-mounted lights." *Id.*

Date: July 25, 2025

          Respectfully submitted,

          */s/ Kristen E. Dennison*
          Kristen E. Dennison, Esq (Admitted *Pro Hac Vice*)
          **LITTLETON JOYCE UGHETTA & KELLY LLP**
          2460 N. Courtenay Pkwy, Suite 204
          Merritt Island, FL 32953
          Tel: 321-574-0280
          Fax: 321-574-4054
          Kristen.Dennison@LittletonJoyce.com

          – and –

          Martha C. Gaythwaite, Esq., Bar No. 9828
          **VERRILL DANA LLP**
          One Portland Square
          Portland, ME 04101
          (207) 253-4650
          mgaythwaite@verrilldana.com

          *Counsel for Defendant Sig Sauer, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed through the ECF system and will be sent electronically to all counsel of record.

Dated: July 25, 2025

                                                 */s/ Kristen E. Dennison*
                                                 Kristen E. Dennison