IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID ALAN COLE and )
KIMBERLY COLE, )
        Plaintiffs, )
 ) Case No. 1:23-cv-00327-NT
        v. )
 )
SIG SAUER, INC. )
        Defendant. )

## DEFENDANT SIG SAUER INC.'S REPLY IN SUPPORT OF ITS MOTION TO PREVENT PRETRIAL PUBLICITY BY PLAINTIFFS

NOW COMES the Defendant, by and through undersigned counsel, and submits this reply in support of its Motion to Prevent Pretrial Publicity (ECF No. 86) and request for an Order preventing the Plaintiffs and their attorneys from engaging in pretrial publicity.

Remarkably, in their Opposition brief, Plaintiffs do not deny that their intentional actions risk having the effect of tainting the jury pool in this jurisdiction. Instead, their response to Sig Sauer's Motion is to justify and deflect. Their primary arguments are that the Motion should be denied because (1) Plaintiffs' conduct is protected by the First Amendment of the U.S. Constitution, and (2) Sig Sauer has made public statements about the P320. The former argument misapplies First Amendment law to this particular case and misconstrues it in the face of the direct conflict with Sig Sauer's right to a fair trial. The latter argument is a quintessential example of a *tu quoque* fallacy, as Plaintiffs seek to divert attention away from their actions onto Sig Sauer in an inappropriate attempt to ignore the actual legal question at hand. Each will be addressed in turn.

### I.    Plaintiffs' Pretrial Publicity Campaign is Not Protected By the First Amendment

First, Plaintiffs' Opposition improperly presupposes that liability has already been established against Sig Sauer and ignores the fact that liability in this case (and all other cases) is

vigorously contested. Plaintiffs make repeated reference to the fact that "3 juries" have found that the P320 was defectively designed and, likewise, make multiple references to "hundreds" of "victims" and/or lawsuits regarding the P320's design. Opposition, ECF No. 91 at 1, 4, 6, 9. It is notable that Plaintiffs misrepresent the actual outcomes of P320 cases that have been adjudicated. Of the three cases referred to by Plaintiffs, two are presently on appeal, and two of the cases resulted in defense verdicts. Moreover, Plaintiffs completely ignore the seventeen dismissed P320 cases.

It is illogical and inappropriate for Plaintiffs to claim that those three cases somehow amount to an established "issue of significant public concern" under these circumstances or that a description of the P320 as "dangerous and defectively designed" is somehow "not [just] a matter of counsel's opinion." *Id.* at 8. Those unrelated cases have to do with completely different scenarios regarding completely different events, they do not hold preclusive effect in this case, and they cannot and should not be used to draw conclusions about the results of this case. Sig Sauer acknowledges that the First Amendment provides protection in many scenarios, but a campaign of inflammatory opinions and unproven remarks regarding Officer Cole's case does not inform a society-wide public safety issue just because Plaintiffs say it does. Plaintiffs accuse Sig Sauer of trying to eliminate a "public awareness" – rather, Sig Sauer's concern is the elimination of the poisoning of a jury pool which Plaintiffs are actively pursuing.

Second, some of Plaintiffs' pretrial publicity activities in this case, most notably the national "Inside Edition" interview, are particularly notable and atypical because they focus specifically on the allegations, evidence, and plaintiff in **this particular case**, rather than the P320 as a general product. Statements by both Plaintiffs' counsel and Officer Cole during the "Inside Edition" segment included liability arguments specific to this case, factual allegations, video

2

evidence, statements of opinion about Sig Sauer's liability in this case, and Officer Cole's remark that he "would like Sig Sauer to be held accountable, first of all.  And second of all, do what's right and keep law enforcement safe."  In no way are such statements the kind of "truthful reports" of judicial proceedings that have been contemplated in other courts in the face of other scenarios. *Id.* at 5 (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560 (1976)).  Rather, the content of the pretrial publicity being broadcast across Maine and the rest of the country is not just about handguns, not just about Sig Sauer, not just about the P320, but about the exact pistol Officer Cole possessed at the time of the incident giving rise to this case and what did or did not happen in that incident.  The interview amounts to closing argument-style rhetoric that is not seeking to educate the public about a broad safety issue but rather instruct the viewers explicitly about Plaintiffs' unproven conclusions about Sig Sauer's alleged culpability in this particular lawsuit.  The publicity is unusually and distinctly prejudicial in that respect.

Third, Plaintiffs misapprehend the extent to which First Amendment protection applies in situations where speech infringes upon a defendant's right to a fair trial.  In their Opposition, Plaintiffs highlight a passage from *Chicago Council of Lawyers v. Bauer*, in an attempt to argue that federal court precedent supports their ability to make public comments about the subject of the instant litigation. *Id.* at 6.  Ironically, in that very case, the Seventh Circuit specifically stated that "the right of free speech **must give way to the right of a fair trial when there is an irreconcilable conflict**." 522 F.2d 242, 248 (7th Cir. 1975) (emphasis added).  In discussing the issue further, the Court stated:

> Plaintiffs say that they do not ask constitutional protection for comment on litigation that "In fact affects or poses a clear and present danger to the administration of justice" or "In fact constitutes a serious and imminent threat to the administration of justice." They acknowledge the right of courts to protect their trials and to take all reasonable means to ensure a fair trial to every litigant. The plaintiffs argue that fair trials are not in issue because they "do not seek to protect

3

> lawyers' comments that actually impair the ability of the trial court to afford fair trials." Finally, they maintain that there is no need to "balance" the First Amendment rights of lawyers against litigants' due process rights to fair trials since these two rights do not compete.
>
> We are not as sanguine as plaintiffs that there is no competition or conflict between the right of lawyers to free speech and the right of litigants to fair trials. If by noncompetition they mean that from an ideal or abstract view the two rights can and should coexist without disharmony, we might agree; however, pragmatically, in everyday situations there are bound to be conflicts. Consequently, when irreconcilable conflicts do arise, the right to a fair trial, guaranteed by the Sixth Amendment to criminal defendants and to all persons by the Due Process Clause of the Fourteenth Amendment, **must take precedence over the right to make comments about pending litigation by lawyers who are associated with that litigation** if such comments are apt to seriously threaten the integrity of the judicial process. …That courts have the duty to ensure fair trials "the most fundamental of all freedoms" is beyond question. The Supreme Court made this clear in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Moreover, the Court in that case settled the corollary proposition that courts have the power to "take such steps by rule and regulation that will protect their processes from prejudicial outside interferences." 384 U.S. at 363, 86 S.Ct. at 1522.

*Id.* at 247–48 (7th Cir. 1975) (footnote omitted) (emphasis added). These principles are well-settled and have been plainly articulated by the First Circuit as well. *See, e.g., In re Providence J. Co., Inc.*, 293 F.3d 1, 13 (1st Cir. 2002) (noting that when the right to a fair trial "collides" with First Amendment considerations, the right to a fair trial takes precedence).

Sig Sauer is a staunch defender of the First Amendment. That cherished Amendment, however, does not give Plaintiffs and their counsel the unfettered right to make it difficult for the parties to find a fair and unbiased jury. Nor does it give Plaintiffs' counsel the right to make misrepresentations to the Court. Glaringly absent from the Plaintiffs' opposition is any mention, let alone explanation, for why Plaintiffs' counsel represented to the court on May 28, 2025, that his firm was not giving "national presentations" about Sig Sauer and the P320 when, five days later, "Inside Edition" aired the program featuring not only Plaintiffs' counsel but also Officer

4

Cole himself. The law is clear that there are appropriate limits to pretrial speech and appropriate safeguards available to the Court to preserve the sanctity of the trial process. The invocation of both is necessary and appropriate in this case.

## II. In Attempting to Deflect Blame onto Sig Sauer, Plaintiffs Fail to Controvert Sig Sauer's Motion

The Plaintiffs' Opposition memorandum is a classic example of the adage that the best defense is a good offense. While an effective strategy in some situations, it is not an appropriate response to the pending motion. Plaintiffs' tactic of pointing to Sig Sauer's own public statements regarding its product is not just a red herring, but rather an attempt to conceal the fact that Plaintiffs do not have a good argument in support of their pretrial publicity campaign.

The differences between Sig Sauer's public statements regarding the P320 referenced in Plaintiffs' response and Plaintiffs' pretrial publicity campaign are obvious and substantial. Notably, unlike Plaintiffs' national statements, none of Sig Sauer's public comments have contained anything regarding the facts of this specific case. Additionally, Sig Sauer's previous comments regarding the dismissal of various P320 cases have occurred **after** the dismissals occurred, and not during the pretrial phase of the case. Such press releases are routine in the industry, indeed in every industry, and are not in any way comparable to Plaintiffs' conduct which has publicized the facts of the case and Plaintiff himself prior to trial. The majority of Sig Sauer's statements about the P320 in the public sphere amount to standard press releases and public statements by a manufacturer about its product.

Nowhere do Plaintiffs attempt to explain how Sig Sauer bringing two private lawsuits in Oregon and Washington would somehow have the effect of tainting the Maine jury pool in the present *Cole* case. Nowhere do Plaintiffs attempt to explain how Sig Sauer writing cease and desist letters to gun ranges and competitive shooting organizations in unnamed locations around

5

the United States would somehow have the effect of tainting the Maine jury pool in the present *Cole* case. Nowhere do they acknowledge that the P320Truth website contains no mentions whatsoever of the *Cole* case. Nowhere do Plaintiffs acknowledge that Sig Sauer's "It Ends Today" campaign makes specific reference to and **was created in response to** the very publicity tactics exhibited by Plaintiffs' counsel and Officer Cole in the present case. The truth is that Sig Sauer specifically does not speak or talk about active litigation for many reasons, one of those reasons being an avoidance of the appearance of improper pretrial publicity.

Plaintiffs' kneejerk attempt to criticize Sig Sauer's broad conduct that is divorced from this specific case is another example of Plaintiffs trying to argue that the "universe" of P320 cases is what should control, rather than the single case pending before this Court. Sig Sauer has every right to discuss its products just like every other manufacturer, and just like it has since long before P320 litigation matters surfaced. Likewise, Sig Sauer has every right to deal with business and sales issues with private third-parties, and to challenge improperly-issued P320 bans in ways that have no bearing on this lawsuit or its potential jury venire. In sum, Plaintiffs' unsupported attempts to richochet attention away from its actions amount to a flimsy defense of their own attempts to litigate this specific case in the media, particularly after misrepresenting to Magistrate Judge Nivison that they were not doing so.

### III. **Jury Voir Dire is an Inadequate Solution**

For all the reasons set forth above, jury *voir dire* is inadequate in this particular case due to the unique and pervasive nature of Plaintiffs' pretrial publicity. Using the "Inside Edition" interviews as an example, Plaintiffs have made their media campaign about Officer Cole's case specifically, and about Plaintiffs' counsel's liability theories in the case. As a result, those pretrial statements and any other similar past or future pretrial statements, are uniquely likely to have an

effect in this jurisdiction specifically, where Officer Cole resides and where this case is pending. It is, of course, presently unknown exactly who among the jury pool will have been tainted by pretrial statements, but allowing Plaintiffs and their counsel to continue to make similar statements would run an unreasonable risk of allowing the tainting of the jury pool to pass the point of no return if it has not already.  Said differently, it is possible that only some of the venire are aware of Plaintiffs' statements, but if the publicity is allowed to continue, that number may reach a critical mass where a fair trial is unfeasible.  Additionally, one would expect that repeated public statements about the *Cole* case also would be expected to have a cumulative effect such that each becomes more prejudicial in light of the body of past statements.  On the other hand, the public would not benefit from additional publicity by Plaintiffs in advance of the trial in this case.[1]

As requested in its Motion, and for the reasons set forth therein and above, Sig Sauer respectfully requests that this Court enter an order as described in the Motion.

Respectfully submitted,


Date:  September 29, 2025         */s/ Martha C. Gaythwaite*
                                  Martha C. Gaythwaite, Maine Bar No. 2811
                                  Verrill Dana, LLP

---

[1] It already was going to be challenging to find a fair and impartial jury in this case. The Plaintiff is a law enforcement officer who was injured in the line of duty. His father, Officer Eugene Cole, was a law enforcement officer who was killed in the line of duty in 2018. His murder was understandably the subject of widespread news coverage.  Officer Cole and his sacrifice continue to be commemorated.  Recognizing that there would be difficulties in jury selection already, the Defendant filed a request for a status conference and limited discovery about the Plaintiffs' pre-trial publicity efforts when it appeared that Plaintiffs' counsel might be making statements that could contaminate the jury pool. Plaintiffs' counsel misled the court and undersigned counsel claiming that no pretrial publicity was taking place. The record supports the conclusion that the Plaintiffs' pretrial publicity poses a "substantial danger" of depriving the Defendant of a fair trial in contravention of Rule 3.6 of the Maine Rules of Professional Conduct and Local Rule 83.3(a).

        One Portland Square
Portland, ME 04101
Telephone: (207) 253-4650
mgaythwaite@verrill-law.com

/s/ *Kristen E. Dennison*
Kristen E. Dennison, Pro Hac Vice
Littleton Joyce
2460 N. Courtenay Parkw, Ste. 204
Merritt Island, FL  32953
Telephone:  (321) 574-0280
kristen.dennison@littetonjoyce.com

*Attorneys for Sig Sauer, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the date indicated below I caused a copy of the foregoing pleading to be filed with the Court's ECF filing system, which will cause an electronic notice to be sent to counsel of record.


Date:  September 29, 2025    */s/ Martha C. Gaythwaite*
                                                          Martha C. Gaythwaite, Maine Bar 2811
                                                          Verrill Dana, LLP
                                                          One Portland Square
                                                          Portland, ME 04101
                                                          Telephone: (207) 253-4650
                                                          mgaythwaite@verrill-law.com

                                                          *Attorney for Sig Sauer, Inc.*