## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

DAVID ALAN COLE and )
KIMBERLY COLE, )
        )
     Plaintiffs, )
        )   Case No. 1:23-cv-00327-JCN
     v. )
        )
SIG SAUER, INC. )
        )
     Defendant. )

### SIG SAUER INC.'s MOTION *IN LIMINE* NO. 11
### TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING
### FAILURE MODES, EFFECTS, AND CRITICALITY ANALYSIS (FMECA)

Defendant Sig Sauer Inc. ("Sig Sauer"), by and through undersigned counsel, hereby moves this Court *in limine* pursuant to Fed. R. Evid. 401 and 403 to exclude all evidence, testimony, argument and reference to a 2017 Failure Modes, Effects, and Criticality Analysis (the "FMECA") that Sig Sauer prepared on a different version of the P320 pistol in connection with the United States Army's Modular Handgun System procurement. The FMECA assessed the military's version of the P320 pistol which was designed prior to significant modifications to the P320 pistol in 2017—five years before the sale of Plaintiff's P320 pistol. Moreover, the findings in the FMECA, by the express admission of their author, were "very, very subjective," based on "intuition," unsupported by data, and incapable of being proven correct. An admittedly subjective guess about a different pistol is not a finding about Plaintiff's pistol and is therefore irrelevant to the claims at issue. Because the FMECA is irrelevant and because its minimal probative value is substantially outweighed by the danger of unfair prejudice and jury confusion, it should be excluded.

## I.     BACKGROUND

### A.  The Incident

Plaintiff David Alan Cole ("Plaintiff"), a detective with the Somerset County Sheriff's Office ("SCSO"), was injured on May 4, 2022, when a foreign object—likely the zipper tab from his department-issued jacket—entered the exposed trigger area of his holstered P320 pistol and moved the trigger rearward with sufficient force to discharge the weapon. *See* D. Cole Dep. at 111:13-112:10 (ECF No. 108-1)[1]; R. Kent Dep. (Vol. 1) at 6:6 (ECF No. 108-2); W. Vigilante Dep. (Vol. 1) at 22:15-22 (ECF No. 108-3). SCSO selected the P320 pistol as its duty weapon after a lengthy evaluation process and also selected the Blackhawk Serpa CQC holster. *See* D. Lancaster Dep. at 18:14-24, 56:6-57:1 (ECF No. 108-4); M. Rizzo Dep. at 104:20-105:3; 121:2-15 (ECF No. 108-5). At the time of the incident, Plaintiff was carrying his P320 in the Blackhawk holster while in the process of removing his jacket and vest as he was walking to his car. D. Cole Dep. at 111:13-112:10 (ECF No. 108-1). The holster did not fully cover the trigger guard of Plaintiff's P320 pistol, making the trigger accessible to foreign objects, such as the zippers and zipper tabs attached to and dangling from the jacket Plaintiff was holding in his hands at the time of the discharge.  *See* W. Vigilante Dep. (Vol. I) at 25:20-27:9 (ECF No. 108-3).

It is undisputed that the firearm discharged only after the trigger was actuated by a foreign object. Plaintiff's proposed design expert, Randy K. Kent, M.S., P.E., testified unequivocally that, in his opinion, "the trigger was pulled by a foreign object or something other than David Cole's finger or any part of his body." *See* R. Kent Dep. (Vol. I) at 6:6 (ECF No. 108-2). Plaintiff's proposed human factors expert, William Vigilante, Ph.D., likewise based his opinions on the

---

[1] For non-duplication purposes, the factual background section refers to the equivalent attachments filed as exhibits to Sig Sauer's Motion *in Limine* No. 1 to Preclude Evidence of Other Incidents (ECF No. 108).

premise that the trigger was moved before the weapon discharged. *See* W. Vigilante Dep. (Vol. I) at 22:15–22:22 (ECF No. 108-3).

### B. The FMECA

Five years before Plaintiff's incident, but three years after the design and development of the earlier version of the P320 pistol, Sig Sauer's then-Vice President of Engineering prepared an FMECA for the military's version of the P320 pistol to satisfy a contract requirement in connection with its award of the Army's Modular Handgun System contract. *See* FMECA (Ex. A); Deposition of David Johnson in *Neshin v. Sig Sauer, Inc.* ("Johnson Dep.") at 83:22-84:7 (Ex. B). The FMECA was prepared by Sig Sauer's former Vice President of Engineering, David Johnson ("Johnson"), who had never prepared an FMECA before. *Id.* at 12:19-21. Johnson filled out the FMECA based on a military form, identifying certain hypothetical risks associated with any pistol and identifying the specific features on the military's version of the P320 pistol that could mitigate those risks. *Id.* at 20:2-6. Johnson drafted the FMECA with a "working assumption … that the pistol had met the test requirements of the government and that we were not going to be making design changes." *Id.* at 83:16-20. Johnson confirmed that the occurrence grade for the foreign-object failure mode, the very entry Plaintiffs likely intend to feature, was only assigned to "the version of the gun submitted to the government." *Id.* at 50:21–23. Further, the FMECA's author could not say whether he would have rated a pistol without a manual safety the same or differently as the military version rated and submitted through the FMECA.[2] *Id.* at 51:8-10.

---

[2] To be clear, because the military required all pistols submitted for consideration under its solicitation to have a manual thumb safety, *see* AR-PD-177, § 3.4.4 (Ex. C), every manufacturers' FMECA would have included the same language in the FMECA regarding a manual thumb safety reducing the risk of an unintended discharge, including Glock, which does not even have an optional manual thumb safety for sale to the public. *See* Watkins Report at 75 (Ex. D); Glock Releases Images of Its MHS Submission (Ex. E).

On the second point, Johnson was equally clear that the grades he assigned in the FMECA were not objective measurements of anything. Asked how he arrived at the occurrence grade for the risk of an accidental trigger pull from a foreign object, he testified that the process was "very, very subjective" and rested on "intuition." *Id.* at 27:8–14. Asked how he determined a specific probability range, he repeated that "this was very subjective" and that he "can't tell you what thought process I was using at the time." *Id.* at 30:15–18. He could not even recall if anyone else in Sig Sauer's engineering team reviewed his subjective grades. *Id.* 30:20–24. And when confronted with the implications of grading "all subjectively," he conceded he could not vouch for the result: "I would not be able to prove that these are correct." *Id.* 51:12–18. The risk assessment grades, on which Plaintiffs seek to rely, are nothing but a "subjective" and therefore speculative analysis. *Id.* 74:7–11.

Indeed, Johnson also explained the limited purpose of the exercise. Because the pistol "had been under evaluation by the government for an extended period of time and was being found technically acceptable," SIG was "required to submit this document" and, "without having input from the government on what hazards to address, did our best to identify what we thought were hazards." *Id.* 41:22–42:7. The FMECA's author squarely rejected the inference Plaintiffs hope the jury will draw, that identifying a hazard in the FMECA reflected a design problem, specifically testifying that "if you're implying that because of this activity of creating the FMECA and identifying that as a hazard that there were -- drove the design, that's incorrect." *Id.* 41:8–11.  As set forth below, the FMECA and any argument related to the FMECA should be excluded at trial.

## II.    LEGAL STANDARD

Motions *in limine* permit courts to rule on evidentiary issues pretrial to streamline trial and avoid prejudice under the Federal Rules of Evidence, including Rules 401, 402, 403, 404, 801–

803, 702-03, 901, and others.  The purpose of a motion *in limine* is to prevent the jury from hearing evidence that is irrelevant, inadmissible, or prejudicial. *Cardiaq Valve Technologies, Inc. v. Neovasc Inc.*, 2016 WL 8203206 (D. Mass. Apr. 25, 2016). Such evidentiary rulings are left to the sound discretion of the trial judge.  Under Fed. R. Evid. 401 evidence is relevant only if it has "any tendency to make a fact more or less probable" and that fact "is of consequence in determining the action. Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

### III.    ARGUMENT

#### A.  The Court should exclude the FMECA, which is irrelevant.

First, the FMECA is irrelevant because it does not assess the commercially available P320 in its post-2017 design configuration, and thus it assesses an entirely different pistol designed for the U.S. Army. Johnson specifically confirmed that the pistol that was evaluated by and through the FMECA was "the version of the gun submitted to the government." Johnson Dep. 50:21–23 (Ex. B). By contrast, Plaintiff's pistol was the commercial, re-designed P320 pistol. Kent Dep. at 160:15-17 (Ex. F). In fact, Plaintiffs' design expert, Randy Kent, admitted that the VUP is not relevant to Plaintiff's discharge. *Id.* at 160:24-161:2 ("Q. Do you have any opinion that the Voluntary Upgrade Program is relevant to what occurred with David Cole's discharge? A. Yeah, I don't believe it is, yeah."). A risk assessment performed on a differently configured military weapon has no tendency to establish the condition or risks associated with the subject pistol.

Second, and more fundamentally, the FMECA assigns no objective risk level at all. As its author repeatedly admitted, the grades were subjective impressions he "would not be able to prove" are correct. Johnson Dep. at 51:17–18 (Ex. B). A subjective guess about a generic failure mode proves nothing about whether Plaintiff's pistol was allegedly defective or what caused it to fire and is therefore irrelevant.

**B. A substantial risk of unfair prejudice and jury confusion also warrants exclusion under Fed. R. Evid. 403.**

Even if the FMECA were to be found to be marginally relevant, there is substantial risk of prejudice that requires its exclusion. A court may exclude relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. That danger predominates here.

Whatever probative value the FMECA carries, it is marginal at best. As shown above, the document graded a different pistol, the military configuration submitted to the Army with a manual thumb safety, not the commercial, post-2017 design of the P320 the SCSO issued to Plaintiff. Johnson Dep. 50:21–23 (Ex. B). And the grades themselves were, by their author's own account, "very, very subjective" impressions drawn from "intuition" that he "would not be able to prove" are correct. Evidence this attenuated and this speculative has little to offer the jury on any fact of consequence.

Against that slight probative value stands a substantial risk of unfair prejudice. The FMECA is a formal-looking engineering document, organized into grades, probability ranges, and risk-assessment levels. To a lay jury, that format carries an unearned aura of scientific precision and objective measurement. Plaintiffs intend to improperly exploit exactly that impression, offering the chart as an "assignment of risk" and inviting the jury to treat one author's admittedly subjective guesswork as a quantified, validated finding. The prejudice flows not from the evidence's legitimate force but from its capacity to be mistaken for something it is not.

Plaintiff's intended use also rests on a false premise: that listing a failure mode in a subject analysis is somehow an admission of defect. That premise inverts the very purpose of an FMECA. The exercise exists to catalogue potential failure modes so they can be analyzed. Identifying "unintentional discharge" as a potential failure mode is the point of the exercise, it is not an

admission of defect. Johnson rejected that inference directly, testifying that any suggestion that the FMECA "drove the design" was simply incorrect. Johnson Dep. at 41:8-11 (Ex. B). That a lay jury would mistake this cataloguing exercise for an admission is precisely the confusion that Fed. R. Evid. 403 guards against.

## IV.    **RELIEF REQUESTED**

For the foregoing reasons, Sig Sauer respectfully requests an Order excluding all evidence, testimony, argument and reference to the FMECA.

Date: June 5, 2026

*s/ Martha C. Gaythwaite*
Martha C. Gaythwaite, Maine Bar No. 2811
Jeffrey D. Russell, Maine Bar No. 4506
Verrill Dana, LLP
One Portland Square
Portland, ME 04101
Telephone: (207) 253-4650
mgaythwaite@verrill-law.com

/s/ *Kristen E. Dennison*
Kristen E. Dennison, Pro Hac Vice
Littleton Joyce Ughetta & Kelly LLP
2460 N. Courtenay Parkway, Ste. 204
Merritt Island, FL  32953
Telephone:  (321) 574-0280
kristen.dennison@littletonjoyce.com

*Attorneys for Sig Sauer Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below I caused a copy of the foregoing pleading to be filed with the Court's ECF filing system, which will cause an electronic notice to be sent to counsel of record.

Date:  June 5, 2026

*/s/ Kristen E. Dennison*
Kristen E. Dennison, Pro Hac Vice
Littleton Joyce Ughetta & Kelly LLP
2460 N. Courtenay Parkway, Ste. 204
Merritt Island, FL  32953
Telephone:  (321) 574-0280
kristen.dennison@littletonjoyce.com

*Attorney for Sig Sauer Inc.*