## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

DAVID ALAN COLE and    )
KIMBERLY COLE,      )
     Plaintiffs,   )
           )  Case No. 1:23-cv-00327-LEW
     v.     )
           )
SIG SAUER, INC.      )
     Defendant.  )

## DEFENDANT SIG SAUER INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(a)

NOW COMES the Defendant, SIG SAUER Inc. ("Sig Sauer"), by and through undersigned counsel, and hereby moves this Court pursuant to Fed. R. Civ. P. 50(a), after Plaintiffs have been fully heard at trial, for judgment as a matter of law.

### I.  Procedural Posture and Rule 50(a) Standard

Jury trial in this matter commenced on July 27, 2026. Plaintiffs David Alan Cole and Kimberly Cole assert product-liability claims against Defendant Sig Sauer, Inc. arising from an alleged unintentional discharge of a Sig Sauer P320 handgun which occurred while his duty pistol was holstered.  After Plaintiffs have been fully heard, Sig Sauer moves under Fed. R. Civ. P. 50(a) for judgment as a matter of law on all remaining claims, including negligence (Count I), strict liability under 14 M.R.S. § 221 (Count II), fraudulent concealment (Count III), negligent failure to warn (Count IV), defective design or manufacture (Count V), breach of implied warranty of merchantability (Count VI), loss of consortium (Count VII), and punitive damages (Count VIII), and for the entry of judgment in Sig Sauer's favor.

1

Specifically, under Rule 50(a), the Court may resolve a claim as a matter of law where a party has been fully heard and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on that issue. Fed. R. Civ. P. 50(a)(1). The evidence must be viewed in the light most favorable to the nonmovant, drawing all reasonable inferences in that party's favor, and credibility may not be weighed. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (the Court must draw all reasonable inferences for the nonmovant and may not make credibility determinations or weigh the evidence). First Circuit precedent applies this standard by asking whether the evidence permits only one conclusion, or whether a rational jury could find for the nonmovant without speculation. *See, e.g., Lachance v. Town of Charlton*, 990 F.3d 14, 20-21 (1st Cir. 2021) (judgment as a matter of law is proper where no reasonably jury could find for the nonmovant); *Daumont-Colon v. Cooperativa de Ahorro y Credito de Caguas*, 982 F.3d 20, 25 (1st Cir. 2020) (on review of a judgment as a matter of law, the Court cannot pass on witness credibility, resolve evidentiary conflicts, or weigh evidence). District of Maine decisions apply the same formulation. *See Bishop v. Bell Atl. Corp.*, 143 F. Supp. 2d 59, 62-63 (D. Me. 2001) (applying *Reeves* and stating that judgment is proper if no reasonable jury could return a verdict against the movant, with evidence viewed in the nonmovant's favor without weighing credibility).

## II.      Argument

The Defendant's Rule 50 motion should be granted with respect to all claims. On the trial record, no reasonable jury could find for Plaintiffs on essential elements that they bear the burden to prove, and therefore the Court should remove such claims and issues from the jury and enter judgment in favor of the defendant.

### a.  Strict Liability and Negligence Product-Defect Theories (Counts I, II, and V)

Outside of the failure-to-warn theories addressed separately below, Plaintiffs' product-liability claims sound in negligent design (Count I), strict liability under 14 M.R.S. § 221 (Count II), and alleged defective design or manufacture (Count V). Plaintiffs' proof fails as a matter of law because their own design expert, Randy Kent, did not supply legally sufficient evidence of (1) a defect in the subject pistol as sold, and (2) proximate causation—i.e., that any alleged defect, rather than an external actuation of the trigger, caused the discharge at issue.

First, Kent's testimony does not support any manufacturing-defect theory. Kent inspected and tested Mr. Cole's actual P320 and concluded it "functioned normally as designed," identifying no deviation, anomaly, or malfunction unique to this firearm. Kent Trial Dep. at 65:6-10.  Kent's causation opinion confirms that this was, at most, an externally actuated trigger event—not a discharge attributable to any defect independent of trigger movement. Kent agreed that a firearm is designed to discharge when the trigger is pulled, and that a gun is a mechanical device that does not know user intent. *Id.* at 89:3-9.  Kent agreed on cross-examination that a foreign object pulled Mr. Cole's trigger to discharge the P320. *Id.* at 77-79. Thus, proof from the Plaintiffs' own expert establishes that the discharge required trigger actuation by an external object—an intervening mechanism that Plaintiffs did not identify, quantify, or tie to any actionable defect in the pistol as sold.

Next, Kent's alternative-design narrative is insufficient to carry Plaintiffs' burden on defect and proximate cause. Kent's design criticisms focus on platform-wide features (e.g., the absence of a tabbed trigger safety and the P320's trigger geometry), and his comparator testing showed that tabbed-trigger designs may resist certain side/edge actuation. But Kent could not identify the specific foreign object involved here, the precise point of contact on the trigger, or the force applied in the incident. *Id.* at 86:12-87-15.  He also did not test whether the same incident would have

3

occurred with a Glock (or other tabbed-trigger pistol) under the same circumstances. *Id.* at 88:2-89:2. Those gaps leave Plaintiffs without competent proof that any proposed alternative design would, more likely than not, have prevented this discharge, or that any alleged design feature of the P320—rather than the unknown external object and unknown interaction with the holster/clothing—was the proximate cause of Mr. Cole's injury.

In short, Plaintiffs' own design expert (1) found the subject pistol functioned normally "as designed," (2) agreed the discharge occurred because a foreign object pulled the trigger, and (3) could not supply the incident-specific causal facts necessary to connect his generalized design criticisms to this event.[1] Without admissible proof of a defect that rendered the P320 unreasonably dangerous and without legally sufficient evidence of proximate causation, no reasonable jury could find for Plaintiffs on Counts I, II, or V. Judgment should therefore enter for Sig Sauer as a matter of law on each of those counts.

### b. Failure to Warn and Warnings-Based Theories (Counts II, IV, and any warnings aspect of other product claims)

Plaintiffs have not presented evidence of an alleged failure to warn.  Specifically, Plaintiffs designated and presented Dr. William Vigilante as a human-factors and warnings expert, but he admitted that he did not offer any warnings testimony to the jury:

Q. In this case you haven't even talked about warnings, right?

A. In my report I do. We didn't talk about it in the testimony.

Q. In terms of what the jury heard today, you didn't even bother to go into warnings.
If that's your area of expertise that's not what you talked about it, is it?

---

[1] With respect to Dr. Vigilante, he confirmed at trial that he does not have any opinions as to whether the trigger on Mr. Cole's P320 was pulled or actuated to cause it to discharge, as to how the P320 discharged, as to whether the P320 can discharge without the trigger moving. July 30, 2026 Tr. at 156:2-9.  He further acknowledged that the P320 can be purchased with a manual safety, undermining any assertion that Sig Sauer withheld feasible safety options from purchasers. *Id.* at 224:16-20.

A. I wasn't asked about it.

July 30, 2026 Tr. at 156:2-9. Given Plaintiffs' failure to present warnings evidence through their own warnings expert, there is no legally sufficient evidentiary basis for the jury to find essential elements of negligent failure to warn (Count IV) or warnings-based strict liability under 14 M.R.S. § 221 (Count II). Plaintiffs adduced no admissible expert or fact testimony establishing the inadequacy of any specific warning presented to Mr. Cole or his employer, causation through different warnings, or failure of an allegedly required warning.

In stark contrast, Defendant introduced evidence of warnings through its witness, Richard Scott Reidy, the director of law enforcement training at Sig Sauer. Mr. Reidy testified that he taught an instructors' course to members of the Somerset County Sheriff's Department and specifically warned them about the risk of an unintended discharge if a foreign object accidentally gets into the trigger and pulls the trigger guard:

Q. Officer Rizzo testified yesterday that he said it is the responsibility of someone with a loaded gun to make sure that the trigger area is kept safe and not to allow inadvertent finger placement or the inadvertent placement of a foreign object. Is that something that you would have gone over with Officer Rizzo during the class?

A. Yes, we talk specifically about that, especially on the reholster. We have to be aware that clothing and items don't get into that trigger guard, as well as the finger on the trigger as we're reholstering. And that could be anything from handcuff keys to batons to keepers on the belt to the jackets and jacket straps.

July 29, 2026 Tr. at 121:11-22.

Defendant affirmatively adduced evidence of warnings. Plaintiffs did not introduce any warnings evidence, despite designating a specific expert on the issue. On this record, no reasonable jury could find for Plaintiffs on any warnings-based claim, and judgment should therefore enter for Sig Sauer on Count IV and on any warnings-based theory under Count II.

### c.  Fraudulent Concealment (Count III)

Under Maine law, fraudulent concealment requires clear and convincing proof that Defendant had a duty to disclose a material fact and failed to do so with the intent to induce action or inaction, that Plaintiffs actually and justifiably relied on the concealment, and that such reliance caused their injury. *Picher v. Roman Cath. Bishop of Portland*, 2009 ME 67, ¶ 26, 974 A.2d 286; *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280.  Reliance must be personal to the plaintiff (or to the relevant decisionmaker whose decision is at issue) and must be tied to the specific misrepresentation or omission – indeed, the Law Court has emphasized that a plaintiff's own reliance—not a third party's generalized reliance—is required. *E. Maine Med. Ctr. v. Walgreen Co.*, 2025 ME 10, ¶¶ 34–41, 331 A.3d 380 (fraud/fraudulent concealment require harm resulting from the plaintiff's own reliance; third-party reliance does not satisfy reliance element); *Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 23, 742 A.2d 898 (absent an affirmative misrepresentation, fraud requires active concealment or a special relationship creating a duty to disclose).

Plaintiffs' Complaint and proposed jury instructions confirm that they intend to proceed on a theory that Sig Sauer "actively concealed a material fact … or failed to disclose a material fact when it had a duty to do so, with the intent to deceive the user or the public," and that "the Somerset County Sheriff's Department justifiably relied on this omission or concealment when procuring the P320," and that this reliance legally caused Mr. Cole's injuries. Plaintiffs' proposed instruction frames fraudulent concealment to require reliance by the Somerset County Sheriff's Department

in procuring the P320 and causation to Mr. Cole's injury.  The Complaint likewise pleads a fraudulent concealment count asserting a duty to disclose, intent to induce, Plaintiffs' reliance, and causation. Plaintiffs plead a fraudulent concealment claim alleging Defendant failed to disclose material hazards, intended to induce end consumers, Plaintiffs relied, and concealment caused their damages.

Maine law recognizes duties to disclose in limited circumstances, such as where a special or fiduciary relationship exists, or where a party makes partial statements that require further disclosure to avoid deception. *Tobin v. Casco N. Bank, N.A.*, 663 A.2d 1, 2-3 (Me. 1995) (where claim rests on nondisclosure, plaintiff must show active concealment or a specific relationship imposing an affirmative duty to disclose). [CITE] Plaintiffs' pleaded relationship is conclusory, and the trial evidence identified by Plaintiffs shows, at most, generalized marketing statements and public communications not directed to Plaintiffs or to their employer, and not forming a transactional relationship imposing a duty to disclose. There is no evidence that the Plaintiff or his employer read or relied on the statements that the Plaintiffs argue are allegedly inaccurate. On this record, no reasonable jury could find a duty to disclose material facts to Plaintiffs or to the Somerset County Sheriff's Office.  The Complaint's narrative relies on broad, national-level marketing and various public statements concerning the P320, not communications specific to the Somerset County Sheriff's Office or to Mr. Cole. The Complaint relies on marketing statements such as "the P320 won't fire unless you want it to," and other public-facing statements and manuals, not communications shown to have been received by the Somerset County Sheriff's Office or Mr. Cole.  Absent a cognizable duty, fraudulent concealment fails as a matter of law.

Fraudulent concealment requires that nondisclosure be intended to induce the plaintiff (or relevant decisionmaker) to act or refrain from acting. Plaintiffs' theory rests on generalized product

7

messaging and press statements, not targeted inducement to the Somerset County Sheriff's Office regarding the procurement decision at issue, nor inducement to Mr. Cole in any personal decision relevant to causation. Plaintiffs' theory, as pleaded and as presented at trial, rests on general advertisements and public statements rather than case-specific communications intended to induce the Somerset County Sheriff's Office or Mr. Cole with respect to the procurement or use at issue That evidentiary gap is dispositive.

Maine law requires personal, actual reliance by the plaintiff (or by the identified decisionmaker whose decision is at issue) on the specific misrepresentation or omission. *E. Maine Med. Ctr.*, 2025 ME 10 at ¶¶ 34–41.   The reliance element cannot be satisfied by showing that someone, somewhere, might have been influenced by public statements; it must be tied to what the relevant actor saw, knew, and relied upon in making the decision that caused the injury. *Id.*

Here, Plaintiffs' claim expressly hinges reliance on the Sheriff's Office's procurement decision. Plaintiffs rest their claim on their position that the Sheriff's Office must have justifiably relied on the omission or concealment when procuring the P320 But Plaintiffs identify no evidence that the Somerset County Sheriff's Office saw, received, or relied on the particular communications they challenge. Similarly, the Complaint does not allege that Mr. Cole personally saw or relied on any such statements in any way causally connected to his injury. The Complaint does not allege, nor does the evidence at trial suggest, that the Somerset County Sheriff's Office or Mr. Cole actually saw or relied on the specific communications Plaintiffs cite as fraudulent concealment in making the relevant procurement or usage decisions Without proof of actual and justifiable reliance by the relevant actor, no reasonable jury could find for Plaintiffs.

To reach the jury, Plaintiffs must present clear and convincing evidence that the alleged concealment caused their injury—that but for the concealment, the Sheriff's Office would have

8

acted differently in procuring the pistol, or Mr. Cole would have acted differently in a way that would have averted the incident. *Picher*, 2009 ME 67 at ¶ 26. Plaintiffs' own framing requires a causal link from a concealed fact to the procurement decision and then to Mr. Cole's injury, but there is no evidence that any Sheriff's Office decisionmaker relied on, or even received, the allegedly fraudulent communications. Plaintiffs' theory ties causation to the Sheriff's Office's procurement reliance, yet there is no allegation in the pleadings that this Office actually received or relied on the challenged statements.  The injury occurred on May 4, 2022, while Mr. Cole's P320 was holstered, but there is no evidence that connects that injury to any procurement decision made in reliance on the alleged concealment.  On this record, causation fails as a matter of law.

Because Plaintiffs have not adduced evidence from which a reasonable jury could find, by clear and convincing evidence, duty/special relationship or actionable concealment, intent to induce, actual and justifiable reliance by the relevant decisionmaker or by Mr. Cole, and causation, the Court should grant Rule 50(a) judgment as a matter of law on fraudulent concealment.

### d.  Implied Warranty of Merchantability (Count VI)

Plaintiffs also assert a claim for breach of the implied warranty of merchantability. That claim fails as a matter of law because Plaintiffs did not present legally sufficient evidence that the subject P320 was not fit for the ordinary purposes for which such pistols are used, or that any unmerchantable condition proximately caused Mr. Cole's injury.  As set forth above, Plaintiffs' own design expert, Randy Kent, inspected and tested Mr. Cole's actual P320 and concluded it "functioned normally as designed," identifying no manufacturing deviation, anomaly, or malfunction unique to this firearm. Kent Trial Dep. at 65:6-10.  This testimony forecloses any reasonable finding that the pistol was unmerchantable due to a defect in materials or workmanship.

Nor did Plaintiffs present competent proof of causation under a merchantability theory. Kent agreed that a firearm is designed to discharge when the trigger is pulled and that a gun is a mechanical device that does not know user intent, he agreed that a foreign object pulled Mr. Cole's trigger to discharge the P320, he offered no testing or evidence that the P320 discharged without trigger movement in this case, and he could not identify the specific foreign object involved, the precise point of contact on the trigger, or the force applied in the incident. *Id.* at 89:3-9, 77-79, 86:12-87-15. On this record, Plaintiffs have not shown that any condition rendering the pistol unfit for ordinary use existed at the time of sale, or that such a condition—rather than an unknown external actuation of the trigger—was the proximate cause of the discharge.

Because Plaintiffs failed to present legally sufficient evidence that the P320 was unmerchantable and that any unmerchantable condition proximately caused the alleged injury, Sig Sauer is entitled to judgment as a matter of law on Count VI.

### e. Loss of Consortium (Count VII)

Plaintiffs also assert loss of consortium, which is a derivative claim. With judgment warranted on Mr. Cole's underlying claims, the consortium claim necessarily fails as a matter of law.

### f. Punitive Damages (Count VIII)

Under Maine law, punitive damages require clear and convincing evidence of malice—either express malice (ill will toward the plaintiff) or implied malice (deliberate conduct so outrageous that malice may be inferred). *Tuttle v. Raymond*, 494 A.2d 1353, 1361–63 (Me. 1985) (punitive damages require clear and convincing proof of express or implied malice, and recklessness/gross negligence are insufficient). Mere negligence, even gross negligence or recklessness, is insufficient. *Id.*; *see also St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶¶ 7–9, 818 A.2d 995 (defining express vs. implied malice and stating that

10

implied malice is not established by mere reckless disregard); *Batchelder v. Realty Res. Hosp.*, LLC, 2007 ME 17, ¶¶ 11–12, 914 A.2d 1116 (reaffirming *Tuttle* and rejecting punitive damages based on gross negligence or recklessness)*.* Federal courts, including the First Circuit, routinely remove punitive damages from the jury on JMOL when the malice evidence is legally insufficient. *See, e.g., Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 200–03 (1st Cir. 2007) (applying Maine law and vacating punitive damages on judgment as a matter of law where evidence is insufficient to show *Tuttle* malice by clear and convincing evidence); *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 130–31 (1st Cir. 2000) (affirming removal of punitive damages under Maine law where evidence could not support finding of common-law malice under *Tuttle*). District of Maine cases are in accord. *See, e.g., Kelleher v. Boise Cascade Corp.*, 683 F. Supp. 858, 860–61 (D. Me. 1988) (granting judgment on punitive damages; alleged failure to warn/recklessness insufficient to show malice under Maine law). Plaintiffs' own proposed jury instruction correctly states the *Tuttle* malice standard and clear and convincing burden. Namely, Plaintiffs propose that punitive damages require clear and convincing proof of malice—actual ill will or conduct so outrageous that malice may be implied—and that negligence or gross negligence is insufficient.

The trial record, including Plaintiffs' own expert proof and taken most favorably to Plaintiffs, may show disputes over design choices, warnings, and post-sale communications, but there is no evidence of ill will toward Mr. Cole. Nor is there evidence of deliberate, outrageous conduct meeting Maine's implied-malice threshold.[2] At most, Plaintiffs' evidence could support arguments sounding in negligence or recklessness, which Maine law deems inadequate for punitive damages. Plaintiffs seek punitive damages in Count VIII, alleging "actual or implied malice," but

---

[2] Not only is there no evidence of malice, but the testimony shows that Sig Sauer has undertaken extraordinary efforts to provide free safety training to law enforcement, including officers at the Somerset County Sheriff's Department. This no-cost training is available to all law enforcement officers, regardless of whether they use Sig Sauer or another manufacturer's gun. July 29, 2026 Tr. at 105:14-106:19.

11

the pleaded factual narrative concerns product design, marketing, and prior incidents, not any ill will toward Mr. Cole.  Plaintiffs' proposed instruction confirms that negligence or gross negligence cannot sustain punitive damages, and their proof does not rise above that line. Plaintiffs' instruction emphasizes that negligence or gross negligence is insufficient to support punitive damages under Maine law.  Because no reasonable jury could find clear and convincing evidence of express malice or implied malice on this record, punitive damages must be withdrawn from the jury.

## III.    Conclusion

For the foregoing reasons, Sig Sauer respectfully requests that the Court grant judgment as a matter of law under Rule 50(a) on all counts of Plaintiffs' Complaint.

Respectfully submitted,

Date:  August 3, 2026

*/s/ Martha C. Gaythwaite*

Martha C. Gaythwaite, Maine Bar No. 2811
Jeffrey D. Russell, Maine Bar No. 4506
Verrill Dana, LLP
One Portland Square
Portland, ME 04101
Telephone: (207) 253-4650
mgaythwaite@verrill-law.com
jrussell@verrill-law.com

/s/ *Kristen E. Dennison*

Kristen E. Dennison, *Pro Hac Vice*
Littleton Joyce Ughetta & Kelly LLP
2460 N. Courtenay Parkw, Ste. 204
Merritt Island, FL  32953
Telephone:  (321) 574-0280
kristen.dennison@littletonjoyce.com

*Attorneys for Sig Sauer Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below I caused a copy of the foregoing pleading to be filed with the Court's ECF filing system, which will cause an electronic notice to be sent to counsel of record.

Date:  August 3, 2026                    */s/ Jeffrey D. Russell*

Jeffrey D. Russell, Maine Bar 4506

Verrill Dana, LLP
One Portland Square
Portland, ME 04101
Telephone: (207) 253-4626
jrussell@verrill-law.com

*Attorney for Sig Sauer Inc.*