**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

DAVID ALAN COLE and          )
KIMBERLY COLE,               )
               Plaintiffs,    )
                              )    Case No. 1:23-cv-00327-JCN
               v.             )
                              )
SIG SAUER, INC.              )
               Defendant.     )

**DEFENDANT SIG SAUER, INC.'S RENEWED MOTION**
**FOR MISTRIAL AND/OR SANCTIONS**

NOW COMES the Defendant, Sig Sauer Inc. ("Sig Sauer"), by and through undersigned counsel, and hereby renews its motion for mistrial and/or sanctions based on Plaintiffs' repeated violations of the Court's in-chambers rulings governing the scope of other similar incident ("OSI") questioning and agency usage questioning, in particular during the August 3, 2026, trial session. In addition to the multiple violations already chronicled in Sig Sauer's original Motion for Mistrial (ECF No. 198, which is incorporated by reference as though set forth herein), on August 3, Plaintiffs questioned Sig Sauer representative Phil Strader ("Mr. Strader") about numerous OSIs without laying the required foundation that he had personal knowledge. This questioning was contrary to the Court's express limitation and despite defense counsel's advance warning of the risk that Plaintiffs would use the exchange to "shovel" OSI matters before the jury. Plaintiffs also exceeded the Court's limitation on agency usage questions by eliciting specifics, which the Court had initially prohibited, thereby compounding prejudice. The resulting parade of inadmissible insinuations cannot be adequately cured mid-trial. A mistrial is warranted. In the alternative, sanctions and strict prophylactic measures are required, including a bar on any further OSI questioning for the remainder of trial.

**I)        Improper Similar Act Evidence**

The substantive case background of the case is well known.  With specific regard to this motion, a chambers conference occurred on August 3, 2026, during which defense counsel raised concerns about Mr. Strader being asked questions about "other similar act" evidence beyond the six incidents that the Court had admitted. In response to those concerns, the Court provided the following guidance to Plaintiffs' counsel about the scope of  OSI questioning:

> THE COURT: I'll go back to the standard that I said applied, and I do think it applies when they were questioning what you were going to do.  If you've got a good-faith basis to ask the question, you can ask the question. But there better be a good-faith basis, and by that, in response to those questions, he better be saying yes because if he says no, it suggests to me that there wasn't a good-faith basis to ask the question…
>
> MR. HAAZ: Understood.
>
> THE COURT: All right.
>
> MR. HAAZ: I will lay a foundation and have a good-faith basis.

August 3, 2026 Tr. at 192:20-193:6.

> THE COURT: We will see how it plays out. We'll assess as we go, but that's going to be the -- that's the consistent standard we're applying. So, again, I think if - absent some extraordinary circumstance, if he's asked a question he'd better be able to say yes, he does know, because if he doesn't know then –

*Id.* at 193:11-16.

> MS. DENNISON: The only incident that Mr. Strader has testified in or that they know he has personal knowledge of is the Seldes case. So what I don't want is to have documents handed in front of him, are you aware of this case from 2017 this one from 2018 and this one from 2019 without him having personal knowledge. Once the jury hears it, it can't be undone.

*Id.* at 152:13-19.

2

In violation of the Court's ruling, Plaintiffs' counsel then asked Mr. Strader about multiple incidents involving the Safariland holster as well as incidents concerning several other types of holsters.

Q. All right. Are you also aware of the ones that Mr. Boulerice testified to, there is one in Vermont, one in Massachusetts, and then the same one in Honesdale that we saw the video of the officer getting out of the car?

A. It's – it's possible I'm aware of them, but without details I wouldn't be able to say for sure.

*Id.* at 223:8-17.

Q.....Are you aware that P320s have discharged in multiple Safariland-style holsters?

A. I'm aware of those four for sure

Q. Okay. Are you aware whether a P320 has discharged in an Alien Gear Holster?

A. I believe there is record of a light-bearing Alien Gear Holster that had an in-holster discharge.

Q. How about BlackPoint holster?

A. I – I'm not familiar. I'm not sure.

Q. How about a Blade-Tech holster?

A. I – I'm not positive on Blade-Tech holster.

Q. How about a T.REX ARMS holster?

A. It's possible. If there's a gap between the holster and the trigger, it's possible.

*Id*. at 223: 20 to 224: 13

Plaintiffs' counsel then concluded this improper line of questioning by asking about an incident involving a P250 holster even though Plaintiffs' counsel knows that there is a vigorous dispute about whether the gun was even in the holster at the time it discharged.

> Q. In my colloquy, you're aware that P320s discharged in a P250 holster, correct?
>
> A. I am – I have – don't have any knowledge of that specific Holster with – with what you're speaking of, but if there is a gap between that holster and the inside of a trigger guard of a pistol it could theoretically fire with foreign object.

*Id.* at 225: 9-15

On Re-Cross, Plaintiff's counsel then showed Mr. Strader a document about an unintended discharge of a holstered P320 involving a Michigan State Police Officer. Although the questioning followed up on a comment Mr. Strader made in response to a reference Mr. Strader had made in earlier testimony, the follow-up question and letter did not contradict Mr. Strader's testimony.  It served no purpose other than to improperly emphasize for the jury that there had been more unintended discharges in holstered guns than the six incidents the Court had allowed.  Plaintiffs' counsel should not have asked the question. At a minimum, he should have approached side bar in accordance with the Court's previous instruction and the Defendant's ongoing objection.

Notably, Plaintiffs' counsel made no attempt to lay a foundation that any of the referenced incidents he was asking about were "substantially similar", let alone that Mr. Strader knew anything about them.[1]  In sum, as feared by the Defendant, the Plaintiffs were able to unfairly

---

[1] Defense counsel has made multiple requests for the Bates numbers of the documents that Plaintiffs' counsel relied on in asking the questions. They have not received this information.  The Defendant is not aware of the basis for the questions about the other holster manufacturers and, as the Plaintiffs' counsel knows, the parties dispute whether the gun was holstered in a P250 holster at the time it was discharged.

make reference to an unspecified number of additional incidents of alleged unintended discharges involving P320s.

As noted above, the Defendant raised its objection before the questions were asked. They renewed that objection immediately after the questioning had concluded.

> MS. DENNISON: And when we're done with the witness I'm not sure if I'm going to ask -- for proof of the basis for one of the questions they just asked the witness that implicated not -- unintended discharges with P320s in other holsters but they had no basis to believe that Mr. Strader had that Mr. Strader had personal knowledge.

*Id.* at 236:5-10.

> MS. DENNISON: My concern was that they are going to just suggest other incidents beyond those six based on other documentation that may have been provided during the course of discovery, but which had not had a substantial similarity ruling by this Court which we were not provided notice of were going to be address (*sic*) by plaintiffs to make any arguments about substantial similarity – and that had not been established to be substantially similar…
>
> There was no evidence that Mr. Strader knew of any sort of incident in Vermont before that was raised again. And, of course, you know – with the, of course you knew about this. And he's like, I don't know, maybe. Then he went from there into, well, you're aware of P320s that have discharged in Alien Gear holsters and BlackPoint and Blade-Tech and T. REX ARMS. And the implication was there's unintended discharges with P320 in all of these holsters. The witness said, I don't know, I don't know, I don't know. There was no proffer. There was no basis on which they could have believed that Mr. Strader had personal knowledge or any knowledge of those incidents before they asked those questions, and yet they asked them to get this appearance that there's all these other P320 discharges that have not been included. And then to cap it off they said, and you are aware that there has been a P320 that has discharged in this P250 holster.

*Id.* at 245:2-9; 245;25-246:4-15.

> THE COURT: Here I understand defendant's concern about the questions regarding all of the holsters because it suggests that there are -- potentially suggests there are more unintended discharges that are substantially similar than just the ones that we've heard about…

*Id.* at 253:15-19.

The Plaintiffs have still not provided any basis for believing that exposing the jury to these other incidents served any purpose other than to prejudice the jury against the Defendant. The prejudice was particularly unfair on this record in light of Dr. Vigilante's contumacious and repeated comments about other litigation.

## II. Discontinuance of P320s

The Defendant objected to the Plaintiffs asking questions about law enforcement agencies that no longer use P320s on hearsay and Rule 403 grounds. After a lengthy discussion in Chambers, the Court instructed each party that they would be allowed to ask the question about whether some law enforcement agencies still use the P320s and whether some do not.

> THE COURT: So if they want to bring out there's been some discontinuances it's fine, but we're not going to then go into fliers or brochures and notices as to why people have done this unless they open the door further.

*Id.* at 162:3-6.

> THE COURT: I think it's fair for you to be able to refute that implication that military are buying it; therefore it's safe, without getting into -- we're not going to have a back and forth about why anyone is doing anything because, you know, then we've got all kind of issues with 403, et cetera…

*Id.* at 163:9-13.

Following this discussion, Plaintiffs' counsel returned to the courtroom and started to ask Mr. Strader about whether the Houston Police Department had "disallow[ed]" use of the P320. The question required defense counsel to object in the middle of the question to this unauthorized attempt to elicit the type of hearsay that the Court had already determined would not be allowed. Unfortunately, having to object in the middle of the question and request a side bar only highlighted the issue for the jury.

6

> MS. GAYTHWAITE: Your Honor, this seems to be a blatant, blatant violation of the Court's ruling.

*Id.* at 217:21-22.

> THE COURT: …if you want to ask in follow-up to that question that there are some and those include this, this, and this without getting into disallow… -- disallowed is not to come out.

*Id.* at 221:14-20.

As a result of these clear violations of the Court's orders that unfairly prejudiced the Defendant, Sig Sauer renews its motion for a mistrial in this matter.  In the alternative, Sig Sauer moves for sanctions against Plaintiffs, including that the Court preclude Plaintiffs from presenting any additional evidence or argument about OSIs; allow Sig Sauer to play all six of its proposed videos involving unintentional discharges of Glock pistols; and allow Mr. Strader to testify about his knowledge of unintentional discharges of Glock pistols. The Court should also require Plaintiffs' counsel to: (1) disclose the documentary basis for the questions they asked Mr. Strader; (2) why they believed those events met the Court's definition of substantial similarity; and (3) their good faith basis for why they believed Mr. Strader knew about those events.

## Argument

a. **The Court Has Broad Discretion to Grant A Mistrial in a Civil Jury Trial Based on Ineradicable Taint.**

The Court has wide latitude to police the fairness of trial proceedings and to determine whether misconduct or prejudicial matter has so infected the jury that the trial cannot proceed fairly.  The matter of granting a mistrial is "is peculiarly within the discretion of the trial judge for he is in a better position ... to assess the potentially prejudicial impact of such conduct by parties, witnesses and counsel." *Rivera v. Bayamon*, 174 F.R.D. 247, 249 (D. P.R. 1997) (quoting

7

30157535_1

*Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d 1152, 1178 (10th Cir. 1981)). The governing test is whether the prejudice is incurable—i.e., whether the taint is ineradicable even with curative instructions or other remedial steps. A judge may grant a mistrial "if the taint is ineradicable, that is, only if the trial judge believes that the jury's exposure to the evidence is likely to prove beyond realistic hope of repair." *United States v. Mare*, 668 F.3d 35, 41 (1st Cir. 2012) (quoting *United States v. Dunbar*, 553 F.3d 48, 58 (1st Cir. 2009)).

This standard aligns with the First Circuit's deference to trial courts on prejudice assessments and the centrality of Rule 403 to exclude unfairly prejudicial, confusing, or time-wasting material. *Ramirez v. Debs-Elias*, 407 F.3d 444, 448 (1st Cir. 2005) (quoting *U.S. v. Sepulveda*, 15 F.3d 1161, 1184 (1st Cir. 1993)); *see also* Fed. R. Evid. 403.  Courts routinely recognize that exposing juries to unsubstantiated allegations or "other cases" risks confusion and improper propensity reasoning and warrants strong remedies. *Perrot v. Kelly*, 2024 WL 4593579, at *2 (D. Mass. Oct. 28, 2024) ("[e]xposing the jury to unsubstantiated allegations would cause significant confusion and distract the jury from its task" (quoting *Hicks v. Associations of Apartment Owners of Makaha*, 2016 WL 3856134, at *1 (D. Haw. July 13, 2016))); *see also United States v. Clanton*, 763 F. Supp. 3d 261, 269 (E.D.N.Y. 2025) (holding "lawsuits ... that offer only unproven allegations" inadmissible under Rule 403). The First Circuit has also cautioned that introducing other litigation matters may spawn collateral trials that confuse juries and consume undue time, validating Rule 403 exclusions. As the First Circuit stated in *Kinan v. Brockton*:

> Moreover, introducing evidence of the [] other cases would inevitably result in trying those cases, or at least portions of them, before the jury. The merits of the [] other cases would become inextricably intertwined with the case at bar. The result would be confusion and the consumption of a great deal of unnecessary time.

876 F.2d 1029, 1034-35 (1st Cir. 1989) (finding no abuse of discretion for exclusion of evidence of other related trials).

8

Here, Plaintiffs' repeated injection of "other incidents," "cases," and law-enforcement discontinuance specifics—contrary to the Court's rulings—created exactly the type of ineradicable taint that Rule 403 and the Court's in-chambers limits were designed to prevent. The Court's pretrial order barred certain references without prior approval to avoid unfairness, confusion, and undue expenditure of time, reflecting the Court's Rule 403 balancing. Such references to "other cases" or litigation are not probative of any issue the jury must decide and are unfairly prejudicial to Sig Sauer, particularly given the fact that many of these other lawsuits have not yet been adjudicated. The prejudice here is beyond realistic hope of repair, and therefore a mistrial is warranted.

### b. Plaintiffs Violated the Court's Good-Faith/Personal-Knowledge Limits on OSI Questioning to Mr. Strader, Creating Additional Unfair Prejudice.

The Court set clear boundaries for any OSI questioning of Mr. Strader: foundation and good-faith basis tied to matters within his personal knowledge, no undisclosed expert opinions, and strict Rule 403 limits, as quoted above. Despite these directives, Plaintiffs asked about incidents and specifics that Mr. Strader did not personally know, lacked foundation for, or could not answer without improper opinion, thereby injecting exactly the kind of insinuations Rule 403 forbids and that Sig Sauer cannot meaningfully rebut without collateral trials on each incident.

The Court had already recognized the Rule 403 risks of having the jury play "amateur detective" with OSIs and associated materials. The result is incurable prejudice: the jury heard a parade of OSI insinuations untethered to Mr. Strader's personal knowledge, which invites precisely the propensity/character inference Rule 403 prohibits, and places the defense in an impossible position of either letting the insinuations stand or opening multiple collateral mini-trials.

9

### c. Plaintiffs Violated the Court's Limits on Law-Enforcement Usage/Discontinuance by Eliciting Specifics, Compounding Prejudice.

The Court permitted only narrow, generalized questioning on law-enforcement usage and discontinuance—no quantities, no reasons, and only minimal identification to avoid 403 problems. Plaintiffs crossed those lines by eliciting specifics beyond what the Court authorized, effectively turning this into a trial about other agencies' decisions. *See, e.g.* August 3, 2026 Tr. at 223:23-224:13 (questioning specifically regarding Alien Gear, BlackPoint, Blade-Tech, and T-REX ARMS holsters); 225:9-15 ("…you're aware that P320s discharged in a P250 holster, correct?). This questioning risks the exact 403 harms the Court warned against—quantification, reasons, and insinuations of defect by association—and further invites propensity inferences that are not probative of any element in this case. The cumulative effect is compounding prejudice that cannot be undone.

### d. Plaintiffs' Misrepresentations and Lack of a Good-Faith Basis Warrant Sanctions.

The Court warned Plaintiffs' counsel that OSI questions to Mr. Strader required a genuine good-faith basis reflecting his personal knowledge. Lack of such basis signals a lack of good faith. Plaintiffs failed to identify a concrete, accurate foundation when pressed, and their questioning reflected inaccurate or incomplete information about agencies and incidents, underscoring the absence of good faith. This conduct independently supports sanctions to deter further violations and to remediate prejudice already inflicted on the jury.

### e. Curative Instructions Are Inadequate Given the Parade of OSIs and Asymmetry.

Even where a question or answer is stricken, the jury has still been exposed to the insinuation; the bell cannot be unrung. The damage lingers where the jury has been told that Sig Sauer is involved in "other cases" and "lawsuits," despite the Court's subsequent striking and

10

instruction to disregard. Here, the cumulative "parade of OSIs," coupled with agency-specific discontinuance testimony, creates an ineradicable taint.

The asymmetry is stark: Plaintiffs have injected multiple other-incident insinuations while the defense has been constrained from presenting countervailing third-party OSIs to correct misimpressions without opening collateral trials. That imbalance magnifies the prejudice and confirms that curative language alone cannot restore fairness. The cumulative effect of Plaintiffs' improper insertion of other incidents, William Vigilante's previous intentional and knowing violation of the Court's direct instruction, and the earlier irreversible prejudice caused by Plaintiffs' statements regarding Eugene Cole has unfairly prejudiced Sig Sauer to such a degree that there is no possibility of a fair trial. An order for mistrial must be granted. *See Perrot v. Kelly*, 2024 WL 4593579, at *2 (D. Mass. Oct. 28, 2024) ("[e]xposing the jury to unsubstantiated allegations would cause significant confusion and distract the jury from its task") (quoting *Hicks v. Associations of Apartment Owners of Makaha*, 2016 WL 3856134, at *1 (D. Haw. July 13, 2016)); *Kinan v. Brockton*, 876 F.2d at 1034–35.

### f. Alternative Sanctions Short of Mistrial Are Also Warranted.

Should the Court deny mistrial, it should impose targeted sanctions to restore balance and deter further violations. Sig Sauer respectfully submits that these sanctions should include:

> i. Preclude any further OSI questioning for the remainder of trial, consistent with the Court's Rule 403 safeguards and foundation requirements. As a result of the parties' counterpart motions in limine addressing other unintentional discharge incidents, this Court permitted introduction of a limited number of video recordings of prior incidents only where an incident is shown to be substantially similar and otherwise helpful to the jury without requiring extensive collateral litigation.

> ii. Strike the improper questions and answers and issue a strong curative instruction tailored to dispel any propensity or "other cases" inference.

11

iii.  Require proffers, outside the jury's presence, before any further OSI or agency-usage questions, to confirm foundation, personal knowledge, and compliance with the Court's limits. The Court should require Plaintiffs' counsel to: (1) disclose the documentary basis for the questions they asked Mr. Strader; (2) why they believed those events met the Court's definition of substantial similarity; and (3) their good faith basis for why they believed Mr. Strader knew about those events.

iv.  Allow Sig Sauer to introduce countervailing evidence to cure misimpressions, including previously excluded Glock OSI materials, subject to the Court's discretion, to neutralize asymmetric prejudice. Namely, the Court should preclude Plaintiffs from presenting any additional OSI questioning, and permit Sig Sauer to play all six of its videos involving unintentional discharges of Glock pistols in order to rebut Plaintiffs' improper evidence and to mitigate the innuendo that the existence of other "cases" is evidence of defect. While these videos were excluded because they did not meet the Court's substantial similarity test, the Plaintiffs have now introduced multiple additional alleged OSIs without providing any basis as to whether or not they met the Court's test.

v.  The Court should also allow Mr. Strader to testify about his knowledge of unintentional discharges of Glock pistols.

vi.  Fee shifting for time and expense caused by Plaintiffs' violations, including briefing, transcript review, and oral argument preparation tied to these issues.

vii.  Imposing strict limitations so that Plaintiffs' counsel may only refer to the six admitted OSIs during closing argument and may not argue that there are more P320 unintended discharges than Glock unintended discharges.

viii.  An admonishment and contempt warning to prevent recurrence and to safeguard the integrity of the Court's rulings for the remainder of trial.

These measures are necessary to mitigate the unfair prejudice already sown by Plaintiffs' disregard of the Court's carefully drawn limits. Should the Court not declare a mistrial, the Court should impose various remedies in an effort to try to offset the unfair prejudice.

The Court has already articulated the foundational and Rule 403 guardrails applicable here, including avoiding "cases/lawsuits" terminology, requiring personal knowledge and good-faith bases, limiting Mr. Strader to facts rather than opinions, and cabining law-enforcement

12

discontinuance to non-specific, non-quantified references. Plaintiffs have nonetheless disregarded these limitations, as they did in direct examination of William Vigilante. At the close of Mr. Vigilante's direct examination, counsel for Sig Sauer requested that he be instructed not to mention "cases." The Court agreed and instructed Plaintiffs' counsel to tell Dr. Vigilante to only use "[i]ncident instead of cases and instead of lawsuits." Nonetheless, during his testimony on July 30, 2026, Dr. Vigilante repeatedly attempted to make comments about the number of current lawsuits against Sig Sauer. Although the Court struck and instructed the jury to disregard the last "cases"-laden exchange, the jury nonetheless heard repeated references to "cases," escalating the risk of improper inferences about other lawsuits and alleged wrongdoing. This pattern continued on August 3, 2026, during questioning of Mr. Strader. The cumulative effect of continuous mention of "other cases" and "lawsuits" and unintended discharges beyond the ones that were admitted is impossible to ignore. This bell simply cannot be unrung.

For the foregoing reasons, Sig Sauer respectfully requests that the Court grant a mistrial or, alternatively, impose the targeted sanctions and prophylactic measures set forth above.

Respectfully submitted,

Date:  August 5, 2026

/s/ Martha C. Gaythwaite
Martha C. Gaythwaite, Maine Bar No. 2811
Jeffrey D. Russell, Maine Bar No. 4506
Verrill Dana, LLP
One Portland Square
Portland, ME 04101
Telephone: (207) 253-4650
mgaythwaite@verrill-law.com
jrussell@verrill-law.com

13

/s/ *Kristen E. Dennison*
Kristen E. Dennison, Pro Hac Vice
Littleton Joyce Ughetta & Kelly LLP
2460 N. Courtenay Parkway, Ste. 204
Merritt Island, FL  32953
Telephone:  (321) 574-0280
kristen.dennison@littetonjoyce.com

*Attorneys for Sig Sauer Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below I caused a copy of the foregoing pleading to be filed with the Court's ECF filing system, which will cause an electronic notice to be sent to counsel of record.

Date: August 5, 2026            */s/ Jeffrey D. Russell*

Jeffrey D. Russell, Maine Bar 4506

Verrill Dana, LLP
One Portland Square
Portland, ME 04101
Telephone: (207) 253-4626
jrussell@verrill-law.com

*Attorney for Sig Sauer Inc.*